TITLE GUARANTY & TRUST CO. v. PUGET SOUND ENGINE WORKS
et al.

(Circuit Court of Appeals, Ninth Circuit.  June 10, 1908.)

No. 1,451.

1. UNITED STATES—BONDS OF CONTRACTORS FOR "PUBLIC WORK"—CONSTRUC-
TION AND SCOPE OF STATUTE.

A steam vessel built for the United States under a contract providing for partial payments as the work progressed, and that the parts of the vessel completed and paid for under such method should become the property of the United States, is a "public work," within the meaning of Act Aug. 13, 1894, c. 280, 28 Stat. 278 (U. S. Comp. St. 1901, p. 2523), as amended by Act Feb. 24, 1905, c. 778, 33 Stat. 811 (U. S. Comp. St. Supp. 1907, p. 709), requiring the usual penal bond to be given by a contractor "for the construction of any public building and the prosecution and completion of any public work," with an additional obligation that the contractor shall promptly make payments to all persons supplying him labor and materials in the prosecution of the work, and a bond so given and conditioned by the contractor for such vessel may be sued on by persons furnishing labor or materials as therein provided after the lapse of six months from completion and settlement of the contract; no suit having been brought in the meantime by the United States.

[Ed. Note.—For other definitions, see Words and Phrases, vol. 6, pp. 5838, 5839; vol. 8, p. 7774.]

2. SAME—ACTION ON BOND BY LABORERS OR MATERIALMEN.

While such statute provides that after the lapse of such six months, on application therefor and the filing of an affidavit, any person furnishing labor or materials shall be given a certified copy of the contract and bond on which he may sue, the obtaining of such certified copy is

not jurisdictional, and the failure to apply therefor will not defeat an action on the bond.

3. SAME—CLAIMS COVERED BY BOND—"CLAIMS FOR LABOR OR MATERIAL."

Claims for patterns made for the contractor from which to make castings required for the vessel, for towing in the delivery of materials, for wharfage paid in connection with such delivery, and by a local transfer company for hauling materials, are all for labor or material, within the meaning of the statute, and recoverable on the bond; but advances of freight made to common carriers by such transfer company are not so recoverable.

4. ASSIGNMENTS—CAUSE OF ACTION.

The right of laborers and materialmen to enforce the obligation of the sureties on such a bond is assignable and passes by an assignment of their claims.

5. UNITED STATES—CONTRACTORS' BONDS—ACTIONS—COSTS—ATTORNEY'S FEES.

In an action on such a bond the court may in its discretion allow a statutory attorney's fee in favor of each claimant who has become a party and recovers on his claim to be taxed as costs.

Appeal from and in Error to the Circuit Court of the United States for the Northern Division of the Western District of Washington.

This action was brought in the Circuit Court for the Western District of Washington in the name of United States of America, for the use and benefit of Crane Company, a corporation, plaintiff, against the Puget Sound Engine Works, incorporated, and the Title Guaranty & Trust Company of Scranton, Pa., a corporation, defendants.

The substance of the complaint is that about February 17, 1905, the Puget Sound Engine Works made a written contract with Capt. Grant, of the United States Army, acting for and in behalf of the United States of America, whereby the Puget Sound Engine Works agreed to furnish all the material and labor required for, and to construct and deliver to the United States, free from incumbrances, a steamer with engines, boiler, apparel, furniture, etc., in accordance with certain specifications made and furnished; the steamer to be known as the "Lieutenant Harris." It is alleged that, in compliance with the law, the Puget Sound Engine Works and the Title Guaranty & Trust Company executed and delivered to the United States, through Capt. Grant, their certain bond, wherein it was agreed that the Puget Sound Engine Works should fully perform the covenants, agreements, and conditions contained in the contract for the construction of the steamer, and agreed and provided that the Puget Sound Engine Works should promptly make all payments to persons supplying it with labor and material in the performance of the work provided for in the contract; that the bond was executed and delivered on February 27, 1905; that between June 3 and September 15, 1905, the Crane Company, at the special instance and request of the Puget Sound Engine Works, furnished and delivered to the Puget Sound Engine Works certain goods, wares, and material for use, and which were used, in the construction of the steamer. It is alleged that the construction work was completed on September 22, 1905, and that no action has been brought on the bond by the United States, and that more than six months have elapsed since the final completion of the work of construction upon the steamer, as provided for in the contract. Judgment is asked against the defendants and each of them for $1,194.88.

Thereafter the Olympic Foundry Company intervened, and alleged, substantially, that between May 2 and September 2, 1905, at the special instance and request of the Puget Sound Engine Works, it had furnished and delivered to the said Puget Sound Engine Works certain material, which was used by the Puget Sound Engine Works in the construction of the steamer Harris. Judgment was asked against the defendants and each of them in the sum of $771.04.

Complaint in intervention was also filed by Eyres Transfer Company; its claim being for services in the way of cartage of material to the steamer

Harris, and for payment of certain sums for freight upon material to be used in the construction of said steamer, and which was carted to the said steamer. Judgment was asked against the defendants and each of them in the sum of $89.34.

Complaint in intervention was also filed by Dunham, Carrigan & Hayden Company, a corporation. Said company alleged that it had furnished merchandise and material used in the construction of the steamer. Judgment was prayed for in the sum of $80.20 upon one cause of action, and $223.45 upon another.

The defendant Title Guaranty & Trust Company demurred to the complaint of the Crane Company, and to the several complaints in intervention upon the ground that it did not appear from the face of the complaint that all claims against the bond in favor of the United States had been paid, because it did not appear from the face of the complaint that, before the commencement of the suit, plaintiff applied for or secured a certified copy of the bond or undertaking declared upon, because the action was not predicated upon a certified copy of said obligation, because the United States was not made a party defendant, because the material and service, the price of which is sought to be recovered, were not such as come within the class of material and service provided for by statute governing and defining such a bond as is declared upon, and because the statute does not contemplate construction of a vessel.

There were a number of other complaints in intervention filed, and, in order to facilitate proceedings, a stipulation was entered into, whereby such complaints in intervention should be brought before this court as would exemplify the record in respect to the various points presented, and providing that any judgment which may be entered shall be entered as to all claims, except in so far as any such judgments may be distinguished by individual features.

The demurrers of the appellant Title Guaranty & Trust Company to the complaint of the Crane Company, and to each of the complaints in intervention, were overruled. The Title Guaranty & Trust Company answered. It admitted that it executed, as surety, to the United States, a certain bond, whereby it agreed that the Puget Sound Engine Works should fulfill the conditions contained in the contract for the construction of the steamer Harris, and that the bond was further conditioned for the full payment by the Puget Sound Engine Works to all persons supplying labor or materials for the prosecution of the work provided for in said contract. It denied any indebtedness, and affirmatively set forth the contract between Capt. Grant, for the United States, and the Puget Sound Engine Works. Omitting the more formal parts, the contract is substantially as follows:

Article 1 provided that the Puget Sound Engine Works should furnish all the material and labor required, and should construct, complete, and deliver to the United States, free from incumbrance, a wooden steamer, with engines, machinery, apparel, furniture, etc., as specified and described in the specifications attached to and made part of the contract.

Article 2 provided that full access to the vessel, while under construction, and full facilities for examination of labor and material, should be given to the inspectors appointed by the United States to supervise the work, and that such tests of material as might be deemed necessary should be made at the expense of the Puget Sound Engine Works, under the supervision of such inspectors, and before receiving the finish coat of paint the vessel should be tested, in order to satisfy the United States.

Article 3 provided that, in consideration of the faithful performance of the agreement, the contractor should be paid for the completed vessel, according to plans and specifications, $24,886. Payments were to be made as the work progressed, provided that, in the opinion of the officer in charge, the work progressed satisfactorily, one-fourth the amount, less 20 per cent. of the same, when the labor and material furnished should equal 25 per cent. of the total; a second payment of 15 per cent. of the amount, less 20 per cent. of the same, when the labor and material furnished should equal 40 per cent. of the total. Third and fourth payments upon percentage plans were provided for, less 10 per cent. on the total amount, which was reserved to be paid 60 days after

date of delivery and acceptance of the vessel, provided no defects, due to inferior material or bad workmenship, should be detected or developed.

Article 4 provided that the portion of the vessel completed and paid for under said method of partial payments "should become the property of the United States, but the party of the second part shall be responsible for the proper care of such portion of the vessel so paid for until the final delivery to, and acceptance by, the United States, as more particularly specified in paragraph 15, at page 6, of said specifications."

Article 5 provided that the vessel should be satisfactorily completed by July 15, 1905, and for liquidated damages for time consumed in excess of that time.

Article 6 required the work to be commenced by February 18, 1905.

Article 7 provided that the builder should be paid at the quartermaster's office at Seattle for the vessel completed, as specified, $24,886.

Article 8 provided that, in case of failure of the builder to comply with the contract, the United States should have the power to complete the work at the expense of the builder in such manner as the United States should deem best for the interest of the public service, either by days' labor, or open market purchase, or contract, or both, and any excess of cost resulting from such failure should be charged to the contract.

The defendant also pleaded the execution and delivery of the bond. By the terms of the bond, the Puget Sound Engine Works and the Title Guaranty & Trust Company were held unto the United States in the penal sum of $10,000. The condition of the obligation was such that if the Puget Sound Engine Works should in all respects perform the conditions and agreements agreed upon by the Puget Sound Engine Works to be observed and performed in the contract for the construction of the vessel, and should promptly make full payments to all persons supplying it labor and material in the prosecution of the work provided for in the contract, then the obligation should be void; otherwise, should be in full force and effect.

The defendant further pleaded: That the bond was executed and accepted by the United States for its sole benefit and protection, and that the execution was without any consideration as to any party furnishing labor or material to the Puget Sound Engine Works, to be used, or which was used, in the construction of the vessel, and that the bond was without consideration and without authority of law as to the complainant and the interveners, and each of them, and was without consideration as to the United States; that the complainant and each of the interveners is asserting a claim under the provisions of an act of Congress of August 13, 1894 (chapter 280, 28 Stat. 278 [U. S. Comp. St. 1901, p. 2523]), entitled "An act for the protection of persons furnishing material and labor for the construction of public works," and the amendment to said act, made February 24, 1905 (Act Feb. 24, 1905, c. 778, 33 Stat. 811 [U. S. Comp. St. Supp. 1907, p. 709]); and that the provisions of said act and amendment refer to the construction of structures built entirely upon soil belonging to the United States, and have no application to the construction of vessels or the making or completing of chattels.

The Title Guaranty & Trust Company also set forth: That under the laws of the state of Washington any person who furnished material in the construction of a vessel in the state has a lien, and that whatever labor or material was furnished to the Puget Sound Engine Works by the interveners for use in the said vessel was furnished and became a part of the said vessel, when the same belonged to the Puget Sound Engine Works, and before the same became the property of the United States; that the complainant neglected to enforce its lien against the vessel and suffered the security for the payment of the claim to be lost; that by reason of negligence and delay there has been lost to this defendant all security to which it would be lawfully entitled upon the payment to the said complainant and intervener under said obligation; and that by reason of said action on the part of the said complainant defendant has lost its right to be subrogated to any lien which said complainant had and could have enforced.

To each of these affirmative defenses, the plaintiff and each of the interveners demurred. The court sustained the demurrers.

As no question was raised as to amounts of the various claims, a stipula-

tion was made in respect to certain issues raised by the pleadings. In this stipulation it is set forth: That Charles H. Allmond & Co. furnished certain drawings and patterns between May 10 and September 20, 1905, for which there remains unpaid the sum of $167.87; that said drawings and patterns were used for the making and casting of certain metal parts of the steamer, which said metal parts so cast from said drawings and patterns were used in the actual construction of the boat. It was also stipulated: That the Puget Sound Pattern Works furnished certain drawings and patterns between June 29 and September 21, 1905, for which there remains unpaid the sum of $182.56; that said drawings and patterns were used in the making and casting of certain metal parts of the steamer, which said metal parts, so cast from said drawings and patterns, were used in the actual construction of the vessel. It was stipulated: That the Chesley Towboat Company, between June and August, 1905, furnished certain towing and wharfage for the material furnished the Puget Sound Engine Works for the construction of the vessel; that said material so towed and wharfed by the said towboat company entered into the cost of the construction of the steamer; that the balance due is $83.15; that the Eyres Transfer Company, between May and September, 1905, carted from the various docks to the plant of the Puget Sound Engine Works certain material for use in the construction of the steamer, and paid advance charges to carriers, which amounts to $55.32; and that all of the material so carted, and upon which the charges were paid, was used upon the steamer. It was further stipulated that the steamer was completed September 21, 1905, that no action was brought by the government of the United States within six months thereafter upon the bond, and that the present action was brought within a year after September 21, 1905.

The court entered a judgment against the defendant Title Guaranty & Trust Company, and in favor of each of the claimants. The court also allowed attorney fees as part of the costs in favor of the plaintiff and each intervener, and against the Title Guaranty & Trust Company. Appellant contends such costs are not proper.

Graves, Palmer & Murphy, for appellant and plaintiff in error.
H. T. Grainger, for appellees and defendants in error.

Before GILBERT, Circuit Judge, and DE HAVEN and HUNT, District Judges.

HUNT, District Judge (after stating the facts as above). The rulings of the court below were, in effect, that, under the terms of the contract entered into, the vessel was a "public work" within the provisions of the statute entitled "An act for the protection of persons furnishing materials and labor for the construction of public works," approved August 13, 1894 (28 Stat. 278, c. 280 [U. S. Comp. St. 1901, p. 2523]), as amended by Act Feb. 24, 1905, c. 778, 33 Stat. 811 (U. S. Comp. St. Supp. 1907, p. 709). The act of 1894 provides:

"That hereafter any person or persons entering into a formal contract with the United States for the construction of any public building, or the prosecution and completion of any public work or for repairs upon any public building or public work, shall be required before commencing such work to execute the usual penal bond, with good and sufficient sureties, with the additional obligations that such contractor or contractors shall promptly make payments to all persons supplying him or them labor and materials in the prosecution of the work provided for in such contract; and any person or persons making application therefor, and furnishing affidavit to the department under the direction of which said work is being, or has been, prosecuted, that labor or materials for the prosecution of such work has been supplied by him or them, and payment for which has not been made, shall be furnished with a certified copy of said contract and bond, upon which said person or persons supplying such labor and materials shall have a right of action, and

shall be authorized to bring suit in the name of the United States for his or their use and benefit against said contractor and sureties, and to prosecute the same to final judgment and execution; provided, that such action and its prosecutions shall involve the United States in no expense."

The amended act reads as follows:

"That hereafter any person or persons entering into a formal contract with the United States for the construction of any public building, or the prosecution and completion of any public work, or for repairs upon any public building or public work, shall be required, before commencing such work, to execute the usual penal bond, with good and sufficient sureties, with the additional obligation that such contractor or contractors shall promptly make payments to all persons supplying him or them with labor and materials in the prosecution of the work provided for in such contract; and any person, company, or corporation who has furnished labor or materials used in the construction or repair of any public building or public work, and payment for which has not been made, shall have the right to intervene and be made a party to any action instituted by the United States on the bond of the contractor, and to have their rights and claims adjudicated in such action and judgment rendered thereon, subject, however, to the priority of the claim and judgment of the United States. If the full amount of the liability of the surety on said bond is insufficient to pay the full amount of said claims and demands, then, after paying the full amount due the United States, the remainder shall be distributed pro rata among said interveners. If no suit should be brought by the United States within six months from the completion and final settlement of said contract, then the person or persons supplying the contractor with labor and materials shall, upon application therefor, and furnishing affidavit to the department under the direction of which said work has been prosecuted that labor or materials for the prosecution of such work has been supplied by him or them, and payment for which has not been made, be furnished with a certified copy of said contract and bond, upon which he or they shall have a right of action, and shall be, and are hereby, authorized to bring suit in the name of the United States in the circuit court of the United States in the district in which said contract was to be performed and executed, irrespective of the amount in controversy in such suit, and not elsewhere, for his or their use and benefit, against said contractor and his sureties, and to prosecute the same to final judgment and execution: Provided, that where suit is instituted by any of such creditors on the bond of the contractor it shall not be commenced until after the complete performance of said contract and final settlement thereof, and shall be commenced within one year after the performance and final settlement of said contract, and not later; and provided further, that where suit is so instituted by a creditor or by creditors, only one action shall be brought, and any creditor may file his claim in such action and be made party thereto within one year from the completion of the work under said contract, and not later. If the recovery on the bond should be inadequate to pay the amounts found due to all of said creditors, judgment shall be given to each creditor pro rata of the amount of the recovery. The surety on said bond may pay into court, for distribution among said claimants and creditors, the full amount of the sureties' liability, to wit, the penalty named in the bond, less any amount which said surety may have had to pay to the United States by reason of the execution of said bond, and upon so doing the surety will be relieved from further liability: Provided further, that in all suits instituted under the provisions of this act such personal notice of the pendency of such suits, informing them of their right to intervene as the court may order, shall be given to all known creditors, and in addition thereto notice of publication in some newspaper of general circulation, published in the state or town where the contract is being performed, for at least three successive weeks, the last publication to be at least three months before the time limited therefor."

Appellant's counsel earnestly contend that the view of the lower court is erroneous, and argue that the contract of the Puget Sound

Engine Works was not for the prosecution or completion of any public work, that title to the vessel did not pass to the government until completion, delivery, and acceptance, and that the laborers and materialmen were amply protected by the lien laws of the state of Washington.

The purpose of the original act of 1894 is not altered by the amendment of 1905; nor does the amended act restrict the classes of persons who are entitled to the benefits of the bond required. As the Supreme Court has said, in comparing the two statutes, the amendment "shows the consistent purpose of Congress to protect those who furnish labor or material in the prosecution of public work." Hill v. American Surety Co., 200 U. S. 197, 26 Sup. Ct. 168, 50 L. Ed. 437. Undoubtedly, Congress meant to substitute the obligation of the bond required for such a security as can in most cases be obtained by attaching a lien to the property of an individual. Such purpose harmonizes with the broad object of the whole legislation, which is the protection of persons furnishing materials and labor for public work. As protection is afforded by state statute to the materialman by filing a lien upon a building erected by an individual, so may it be had through an obligation to the United States in contracts for the construction of public works. By keeping in mind that the intent of the statute is that material and labor actually contributed to the construction of the work shall be paid for, and thus that the materialman and the laborer shall be protected, construction of the statute and bond is quite simple.

In United States v. National Surety Co., 92 Fed. 551, 34 C. C. A. 529, the Court of Appeals for the Eighth Circuit said:

"It is also noticeable that in its title the act professes to be one for the benefit 'of persons furnishing materials and labor,' and that in the body of the act the form of the condition to be inserted in the bond for the benefit of the United States is not in terms prescribed; the only provision in that regard being that the bond shall be 'the usual penal bond'—meaning, evidently, such an obligation for the government's own protection as it had long been in the habit of exacting from those with whom contracts were made for the doing of public work. On the other hand, the condition for the benefit of persons who might furnish materials or labor is carefully prescribed. Obviously therefore Congress intended to afford full protection to all persons who supplied materials or labor in the construction of public buildings, or other public works, inasmuch as such persons could claim no lien thereon, whatever the local law might be, for the labor and materials so supplied. There was no occasion for legislation on the subject to which the act relates, except for the protection of those who might furnish materials or labor to persons having contracts with the government. The bond which is provided for by the act was intended to perform a double function: In the first place, to secure to the government, as before, the faithful performance of all obligations which a contractor might assume toward it; and, in the second place, to protect third persons from whom the contractor obtained materials or labor. Viewed in its latter aspect, the bond, by virtue of the operation of the statute, contains an agreement between the obligors therein and such third parties that they shall be paid for whatever labor or materials they may supply to enable the principal in the bond to execute his contract with the United States. The two agreements which the bond contains, the one for the benefit of the government, and the one for the benefit of third persons, are as distinct as if they were contained in separate instruments; the government's name being used as obligee in the latter agreement merely as a matter of convenience."

It is urged that the contracts contemplated and referred to in the statute are only those which have to do with public buildings, or with such works as fortifications, river and harbor improvements, and other works, where the improvement is attached to the soil, and where no mechanic's lien could attach by operation of any state statute. In support of this argument, the appellant quotes from an opinion of Attorney General Griggs, dated June 21, 1900. A careful examination of the reasoning of Attorney General Griggs will disclose that he laid stress upon the fact that the statute of 1894 was intended, in a measure, to remedy the defect in prior legislation in the means of collection at the disposal of laborers and materialmen against contractors upon permanent public works, where no mechanic's or laborer's lien would attach by operation of any state statute. He emphasizes this view by saying that no such reason is applicable to cases of the construction of a specific article, not attached to the soil, the title to which is not in the United States, but which is a mere movable article, such as a vessel, the whole title to which remains in the contractors until its completion and acceptance by the government. The opinion cannot be looked upon as of special force when applied to the case before us, because, as already pointed out, it is expressly provided, by article 4 of the contract involved, that the portion of the vessel completed and paid for under the partial payment arrangement shall become the property of the United States; the party of the second part being responsible for the proper care of such portion of the vessel so paid for until final delivery to and acceptance by the United States, as more particularly specified in the specifications.

Again, the statute extends to construction not only of any public building, but to the prosecution and completion of "any public work," and even goes farther by including "repairs upon any public building or public work." There is no limitation that it shall only apply to public works attached to the soil, and where it is agreed that, as fast as any part of the thing upon which the work is being done is completed and paid for under a percentage plan, such completed part becomes the property of the United States, no lien under a state statute could be enforced, and therefore there is no reason for excluding the construction of a vessel from within the definition of a public work.

In United States v. Perth Amboy Ship Building & E. Co. (C. C.) 137 Fed. 689, the court said:

"Counsel cites in support of his proposition definitions of 'public works' from the Century Dictionary and the American and English Encyclopedia of Law, Second Edition. Without quarreling with these definitions, we conclude that the meaning of the words 'public works' in the act is broader and more comprehensive than the dictionary meaning given to 'public works'; that 'public work' is susceptible of application to any constructive work of a public character, and is not limited to fixed works."

In American Surety Company v. Lawrenceville Cement Company et al. (C. C.) 110 Fed. 717, Judge Putnam discussed the expressions used in the statute and the bonds given under it, and held that the statute of 1894 does not have the same aspect as the ordinary lien statutes of a state, which are generally held to cover only what has

been added to the value of the property against which the lien is asserted. He points out that the underlying equity of such ordinary lien statutes requires them to be so limited in their application, but that the act of Congress referred to and the bond given are susceptible of a more liberal construction, which should be applied as may be necessary to effect the purpose for which the bond of the contractor is given.

The Supreme Court of the state of Washington approved Judge Putnam's opinion, and held that recovery could be had for the furniture for lighthouse keeper's residences under the provisions of the contract and bond then under consideration by the court. United States, to Use of Standard Furniture Co., v. Ætna Indemnity Co. et al., 40 Wash. 87, 82 Pac. 171.

Clarkson v. Stevens, 106 U. S. 505, 1 Sup. Ct. 200, 27 L. Ed. 139, is also cited by appellant. The contract in that case contained a provision that the Secretary of the Navy should appoint some person, whom Stevens, the contractor, should admit within his establishment for the purpose of receiving and receipting for, on account of the Navy Department, all materials delivered therein for constructing the steamer, which materials, when so received and receipted for, should be distinctly marked with the letters "U. S.," and should become the property of and belong to the United States. The Secretary of the Navy agreed to pay as the price of the steamer, when fully completed and delivered in conformity with the contract, a certain sum. Payments were to be made from time to time until a certain amount had been paid, when inspection was to be had, and, if there should be a certification that the vessel could be fully completed according to contract for the remaining balance which might then be due, that the payment of further bills should continue. It was also provided that when Stevens should have fully completed the steamer, and she should have been delivered to and received by the agent of the United States, the full amount of the price remaining unpaid and to become due when she should be fully completed and accepted was required to be paid, and a mortgage security was to be canceled and returned. The contention of the plaintiffs in error in that case was that the title to the unfinished vessel passed, as the work progressed, to the United States, and became vested, together with a right to enforce the contract for its completion, and the security of the mortgage as against the estate of Stevens. The Court of Errors and Appeals of New Jersey held that the title to the ship never vested in the United States as owner. The Supreme Court, through Justice Mathews, decided that the intent which controlled the construction of agreements such as was made was to be ascertained by the terms of the contract and the circumstances attending the transaction, and that the fact that advances were made out of the purchase money, according to the contract for the cost of the work, as it progressed, and that the government was authorized to require the presence of an agent to join in certifying to the accounts, were not conclusive evidence of the intent that the property in the ship should vest in the United States prior to final delivery, and, furthermore, that it did not follow that, because the materials provided for were declared to be the property of the Unit-

ed States, it was intended that they should remain so after becoming part of the structure. "Such a precaution," said Justice Mathews, "might well have been suggested, as a security against a diversion of the materials to any unauthorized use, to preserve them to the United States, in case, by reason of the failure of the work, or from any other cause, they should not be used in the vessel." The case is readily distinguished from that before us, when it is observed that the contract between Stevens and the United States contained no provision that the portion of the vessel, as it was completed and paid for, should become the property of the United States.

The recent decision of the Supreme Court, in Ellis v. United States, 206 U. S. 246, 27 Sup. Ct. 600, 51 L. Ed. 1047, accords with the view that we take of the contract and bond involved in the present suit. The questions there considered by the court arose under indictments and informations filed under Act Aug. 1, 1892, c. 352, 27 Stat. 340 (U. S. Comp. St. 1901, p. 2521), relating to the limitation of the hours of service of laborers and mechanics employed upon the public works of the United States. The statute referred to provides that employment of laborers and mechanics employed by the government or by any contractor "upon any of the public works of the United States * * * is hereby limited and restricted to eight hours in any one calendar day." The words "the public works" led the court to conclude that the objects of the labor referred to must have some kind of permanent existence and structural unity. Justice Holmes said:

"Both of the phrases to be construed admit a broad enough interpretation to cover these cases, but the question is whether that interpretation is reasonable, and, in a penal statute, fair. Certainly they may be read in a narrower sense with at least equal ease. The statute says 'laborers and mechanics * * * employed * * * upon any of the public works.' It does not say, and no one supposes it to mean, 'any public work.' The words 'upon' and 'any of the' and the plural 'works' import that the objects of labor referred to have some kind of permanent existence and structural unity, and are severally capable of being regarded as complete wholes. * * * It is unnecessary to lay special stress on the title to the soil in which the channels were dug, but it may be noticed that it was not in the United States. The language of the acts is 'public works of the United States.' As the works are things upon which the labor is expended, the most natural meaning of 'of the United States' is belonging to the United States."

But an important difference exists between the statute quoted from, regulating hours of labor, and the act of 1894, supra, requiring a bond by a contractor. In the one, the words of the statute are "any of the public works" of the United States, while, in the other, they are "the prosecution of any public work, or for repairs upon any public building or public work." Thus, the statute requiring the bond is more comprehensive than that controlling the hours for laborers and mechanics employed upon any of the public works, and contains the more general words, which the Supreme Court says do not occur in the law regulating hours.

Finally, taking the language of the contract for the construction of the steamer Harris, and the bond, and construing them with relation to the statute, our opinion is that it was agreed upon and intend-

ed by the parties that the property should be passed to the United States as any part or parts thereof should be completed, and that such parts so paid for did pass, that the work was a public one, and that the ruling of the lower court applying the statute of 1894 as amended was correct.

Appellant also claims that it has been deprived of a priority right of the United States; but no claim of the United States is before this court, and none such appears to have been before the court below. The point is not material.

It is contended that the United States ought to have been made a party to this suit; but the United States failed to institute any suit and failed to assert any rights by intervention. It does not appear to have had any interest in this action. Under the amended act, the United States has a priority under certain conditions: It may protect such prior right by bringing suit on the bond within six months after the completion and final settlement under the contract; but, if no such suit is brought, then a creditor can sue, and all creditors have a right to intervene within a year. It would seem that the United States, having failed to sue, or to intervene in a suit brought, cannot claim against the surety by reason of the execution of the bond.

It is said that application by affidavit to the department under whose direction the work of constructing the vessel was performed was a condition precedent to bringing the suit. The amended statute contemplates that the person who may wish to bring a suit shall file an affidavit of his claim with the department having charge of the work for which the bond has been given, and obtain a certified copy of the contract and bond upon which right of action is given. The object of this requirement is to protect the department of the government which may be concerned from being required to give information upon any simple request as to the nature of the contract and bond under which the contractor may be performing his contract, and also to show good faith and interest in the subject-matter. But we do not think that jurisdiction is lacking, unless such an affidavit has been filed.

Objection is made to the claims of the Eyres Transfer Company, Chesley Towboat Company, Allmond Company, and Puget Sound Pattern Works, upon the ground that bills for the labor and materials' furnished by these several parties are not within the purview of the bond. The Eyres Transfer Company claimed cartage and freight money paid out. It was not a common carrier, protected by its lien on freight carried, but was a local transfer company engaged in the business of cartage and delivering. In American Surety Company v. Lawrenceville Cement Company, supra, a claim for hauling material from a regular steamboat landing to the place where the work was being performed was allowed under the following ruling, which we approve:

"We think the master was too strict with reference to some minor claims for transportation. Clearly, he was right in his illustrative suggestion which led up to his conclusion with reference to claims for trucking and water carriage. As stated by him, the carrier ordinarily has a lien for his freight, which is a sufficient protection for him. Therefore, in cases of transportation by a carrier from distant points, or, indeed, from another port than the port at which the contractor's work is being done, the carrier would not

ordinarily be protected by the statutory bond, for two reasons: First, transportation for considerable distances in the regular course, by the ordinary lines of either steam, sail or rail, cannot easily be brought within the words of the statute, 'supplying labor or materials'; and, second, inasmuch as carriage of that character, especially under an ordinary bill of lading, or its equivalent, creates a well-recognized lien for freight, the equitable rule would apply that a carrier, under such circumstances, cannot give up his cargo, and enforce his claim against a mere surety, after he has so placed himself that the surety cannot be subrogated to the security which the law gave. The first objection, however, does not necessarily apply to truckmen who are moving materials from a place of landing to the exact locality of the work under contract, although the distance may be somewhat considerable, nor to water-borne transportation carried on by the servants of the contractor, or for short distances without the aid of steam or a fully equipped vessel. The second objection, moreover, must not be carried to an extreme; otherwise it would defeat the practical operation of the statute. Every person selling materials for cash holds a lien for the purchase money until he voluntarily waives it by delivery, and every person engaged in transportation, who is not the mere servant of the owner of the merchandise transported, holds a carrier's lien, even though the carriage is of miscellaneous parcels, over short distances in the immediate locality, and at frequent, irregular intervals. Nevertheless, with reference to each, such liens are not ordinarily insisted on, and it would be an unreasonable construction of the statute to hold that it intended to interfere with the convenience of minor dealings in such methods as the usual practices establish. Therefore, as already stated with reference to either class, to insist on the fact that the lien is waived, and short credit given, would defeat the beneficial purpose of the statute and the practical ends which it is intended to accomplish."

We cannot approve, though, of the claim of the Eyres Company for freight money advanced to the carriers and added to the cartage bill.

The claim of the Chesley Towboat Company was for wharfage. Such a claim seems to be within the reasonable purview of the statute. United States v. Morgan (C. C.) 111 Fed. 474.

The claims of the Allmond Company and the Puget Sound Pattern Works were for patterns furnished to the molding department of the Puget Sound Engine Works. The patterns were used for the castings which went into the vessel. Why should not those who furnished the patterns be protected as are those who erect the scaffolding upon which carpenters stand, in doing their work upon the actual construction of a ship? We believe they should be.

The point is made that the claims of laborers and materialmen are not assignable under the act; but in United States, to the Use of Fidelity National Bank of Spokane, v. Rundle et al., 100 Fed. 400, 40 C. C. A. 450, the right of laborers and materialmen to enforce the obligation of the sureties on the bond of a contractor for government work, as required by 28 Stat. 278, was held to be assignable.

Error is assigned upon the action of the court in allowing each of the interveners a statutory fee of $10, taxed as costs. The decision in the case of The Oregon, 133 Fed. 609, 68 C. C. A. 603, sustains the action of the lower court.

It is unnecessary to discuss the other points raised by appellant. We have examined them all and find no reason to reverse the decision.

The judgment will be modified by reducing the amount awarded to the Eyres Company by deducting $55.32, amount of freight money paid. As so modified, the judgment in favor of that particular claimant will be affirmed, and the judgments in favor of all other claimants will be affirmed.