## MANDEL et al. v. UNITED STATES, to Use of WHARTON & N. R. CO. et al.*

(Circuit Court of Appeals, Third Circuit. March 19, 1925.)

No. 3218.

**1. United States ⚖67(3)—What are "final settlement" of contracts for public work, within statute as to suits on bonds, stated.**

Under the provision of Act Aug. 13, 1894, as amended by Act Feb. 24, 1905 (Comp. St. § 6923), authorizing suits on bonds of contractors for public work for the use of persons furnishing labor or materials to be "commenced within one year after the performance and final settlement of said contract," "final settlement" relates to the time when the amount due under the contract is determined by the appropriate administrative authority.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Final Settlement.]

**2. United States ⚖67(2) — "Labor," for which surety on bond of contractor for public work is liable, does not include transportation of materials by common carrier.**

Claims of a railroad company for freight and demurrage, arising out of the transportation of material for use of a contractor for public work, are not for "labor," within the meaning of Act Aug. 13, 1894, as amended by Act Feb. 24, 1905 (Comp. St. § 6923), giving a right of action on the contractor's bond for labor and materials furnished.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Labor.]

*Certiorari denied 45 S. Ct. 515, 69 L. Ed. ——.

**3. United States ⚖67(3)—Effect of limitations on suit on bond of contractor for public work stated.**

Under Act Aug. 13, 1894, as amended by Act Feb. 24, 1905 (Comp. St. § 6923), authorizing suit by creditors in the name of the United States on the bond of a contractor for public work, but providing that "only one action shall be brought, and any creditor may file his claim in such action and be made party thereto within one year from completion of the work under said contract and not later," the court is without jurisdiction of a second suit on the same bond, or to permit the use plaintiff therein to file his claim in the first suit after the year of limitation has expired.

In Error to the District Court of the United States for the District of New Jersey; Joseph L. Bodine, Judge.

Action by the United States, to the Use of the Wharton & Northern Railroad Company and others, against the Columbus Circle Construction Corporation and Henry Mandel and Edward J. Zahner, as its sureties. From the judgment, the sureties bring error. Reversed in part and remanded.

For opinion below, see 284 F. 155.

McDermott, Enright & Carpenter and James D. Carpenter, all of Jersey City, N. J., for plaintiffs in error.

King & Vogt and Harold A. Price, all of Morristown, N. J., for defendant in error Wharton & N. R. Co.

Charles E. Hendrickson, of Jersey City, N. J. (John McKim Minton, Jr., and Joseph F. Curren, both of New York City, of counsel), for defendant in error Kellogg Structural Steel Co.

William H. Wurts, of New York City, for defendant in error Witherow Steel Co.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

BUFFINGTON, Circuit Judge. On September 26, 1917, the Columbus Circle Construction Corporation gave a bond to the United States, with Henry Mandel and Edward J. Zahner as sureties, conditioned for the performance of its contract, 2427–B for the construction of a naval ammunition depot at Lake Denmark, Dover, N. J. On the failure of that company to fulfill contract 2427–B, the surety, Mandel, entered into a supplemental contract, 2427–B–X, to complete the same. On Mandel's failure to complete his supplemental contract, 2427–B–X, the Speedwell Contracting Company, by contract, undertook to, and did, complete the work and fulfilled contract 2427–B of the Columbus Circle Construction Corporation.

[1] Quoting from the opinion of the court

below, we here note that "it is to be borne in mind that this contract, No. 2427–B–X, was the supplemental agreement between the original contractor, the surety, and the government for the performance of the contract 2427–B in accordance with the requirements set by the original instrument, and amounted to no more than an agreement between the original contractor, the surety, and the government that payments were to be made to the surety rather than to the contractor." Such being the case, and the several claims here involved being based on the present suit on the contractor's bond, the general underlying question is whether such suit was begun within the time limit fixed by the statute.

On the part of Mandel, the surety and plaintiff in error, it is contended the date of settlement was January 24, 1920, and that the suit on the bond, brought October 18, 1921, was after the year limit provided by statute. On the other hand, it is contended the date of settlement was April 15, 1921, and therefore the suit was begun in due time. The provision of the statute is that suit on the bond shall be commenced "within one year after the performance and final settlement of said contract, and not later," and as touching a question later discussed we here note that "only one action shall be brought, and any creditor may file his claim in such action and be made party thereto within one year from the completion of the work under said contract, and not later."

The contention that January 24, 1920, was the date of the statutory "performance and full settlement" of the contract is based on the letter of that date addressed to the commandant of the Third naval district, and signed by two lieutenants and an expert aide. The court held this letter was not the settlement meant by the statute. We agree with that view. While this letter shows the data for making a settlement, and indeed one that was adopted and affirmed in the settlement when made, yet it is quite apparent that the letter neither was a settlement nor purported so to be. It was, as we have said, addressed to the commandant of the Third naval district. It states that the paper is a board report on amounts still due contractors, etc., and, instead of stating it was a settlement, as that term is regarded under the law,[1] the letter states: "It is recommend-

ed that the addition and deductions as submitted in this report be included in the modification of the contract price of contract No. 2427–B and 2427–B–X, and that authority be granted for settlement of this contract upon the above basis, without deduction for liquidation."

It will thus be seen that the letter is a recommendation of a settlement, and not the making of one. And this estimate of the nonfinality of the letter is proved by the uncontradicted evidence of May, a government employee familiar with the workings of the department, who says that the final making of settlement rested with C. W. Sparks, of the Civil Engineer Corps of the Navy, and that he made such final settlement by his letter of April 15, 1921, which states: "The findings and recommendations of the board (reference A) are approved; * * * accordingly final payment under Contract No. 2427–B–X in the sum of $1,-465.75 is authorized, subject to the execution by the contractors of an unqualified release of claim."

In view of these facts, we agree with the court below in holding April 15, 1921, the date of final settlement.

### Claim of the Wharton & Northern Railroad.

[2] The railroad has two claims—one for freight and the other for demurrage arising on cars consigned to the contractors. These claims arose under the following circumstances: The land where the contracting company was building this ammunition depot was situate in a large government reservation. Through this reserve the government operated its own engines on its own tracks. The tracks of the Wharton & Northern Railroad extended only to the reserve border, and consequently it delivered at that point the cars consigned to the contractors, and the government railroad undertook delivery from that point. There was, therefore, no opportunity for the claimant railroad to collect its freight when the contractor came to remove it; and after the car was delivered to the government railroad, control of the contractor's car passed away from the Wharton & Northern Railroad, and such car was returned to use, not when the contractor unloaded it, but only when the

---

[1] See Illinois Surety Co. v. Peeler, 240 U. S. 221, 36 S. Ct. 324, 60 L. Ed. 609. "We think that the words 'final settlement' in the act of 1905 had reference to the time of this determination, when, so far as the government was concerned, the amount which it was finally bound to pay or entitled to receive was fixed administratively by the proper authority. * * * The time of the final administrative determination of the amount due is a definite time, fixed by public record and readily ascertained."

government railroad returned it to the Wharton & Northern.

The question therefore is: Was the claim of the railroad for freight and demurrage recoverable under the statutory bond, conditioned that the contractors "shall promptly make payments to all persons supplying him or them labor and materials in the prosecution of the work provided for in such contract"? The court below allowed these items, but we cannot accede to this view. The words "labor and material," used by Congress in this statute, are plain words of well-understood meaning, and in the common use and acceptance car demurrage and car freight are not described or embraced by the words "labor and material." Moreover, there is no call for the exercise of judicial construction to give to demurrage and freight the protection of this statutory bond. There was a real hardship to labor and material men who worked upon, or furnished material for, a structure or improvement on government property. They could have no lien and no way of protecting themselves. Accordingly the statute required from the contractor a statutory bond and approved surety responsibility for the protection of unprotected labor and material. But the railroad required no such protection. It could refuse to deliver to the contractor until both freight and demurrage were paid. Hence neither the words of the bond allow, nor the spirit and purpose of the law require, that judicial construction to enlarge or construe the words "labor and material" so as to include freight and demurrage. We agree with what was said by the Circuit Court of Appeals of the Fifth Circuit in United States v. Hyatt, 92 F. 445, 34 C. C. A. 447: "Congress could not have intended to include in the term 'labor,' as used in this act, the freight charges of a railroad on materials carried by it. The railroad is abundantly protected by its lien on freight."

That the circumstances of the particular situation here involved, to wit, that this work was done on a government reservation, that the cars were delivered by the railroad to the government railroad at the border of the reservation, and that the railroad had no opportunity of requiring payment of its freight and demurrage charges before the contractor got the shipments, are facts which make the situation exceptional, and indeed hard on the railroad. But, conceding this exceptional situation, where the railroad could not enforce its lien—a situation it knew existed —that is no reason why the statute should be given a construction different from what we have seen was its real and proper one.

## Claim for Elevators.

This claim arises under the following facts: Two elevators were ordered from the Albro-Clem Elevator Company by the contractor. They were shipped under a bill of lading accompanied by a sight draft, which required payment before delivery. They passed from the control of the railroad and into the reservation under the situation heretofore described, and the draft was not paid. Whereupon the elevator company brought suit against the railroad for recovery of their value, and obtained judgment therefor. The railroad then paid the judgment, took an assignment therefor, and made this claim. It was allowed by the court, and such allowance is here assigned for error. We find no error in the court's action. It rightly regarded this as a claim made by the elevator company for materials furnished and used in the building. Just who placed them there, or how they got there, the testimony does not disclose; but that they were ordered by the contractor for use in the work, that they were shipped to the contractor and were subsequently found in place and use in the building for which they were ordered certainly, in the absence of any convincing countervailing proof, would have justified the allowance of the claim of the elevator company. By assignment the railroad now stands in its place.

On the same grounds, we think the claim for cement furnished, which was also assigned to the railroad, was allowable; but, as we gather from the proceedings, this claim was conceded.

## Claim of the Kellogg Structural Steel Company.

This company brought a suit at law in the court below on the contractor's bond on October 18, 1921. The only objection made to its allowance was that it was not brought within the statutory limit of one year from date of full settlement. As we have held that the date of full settlement was April 15, 1921, no error was committed by the court below in allowing this claim.

## Claim of the Witherow Steel Company.

[3] As we have heretofore seen, the date of full settlement was April 15, 1921, and the suit at law on the contractor's bond was begun by the Kellogg Structural Steel Com-

pany in the court below on October 18, 1921. And the statute provided, as quoted above: "Only one action shall be brought and any creditor may file his claim in such action and be made a party thereto within one year from the completion of the work under said contract and not later." Within such allowed time the Witherow Steel Company took no step to be made a party to such suit, and the statutory time limit to present its claim ended, as the statute was mandatory that the filing of claims could not be done later.

To maintain its claim the Witherow Steel Company shows that on April 14, 1922, it also began an action at law on the bond in the court below, in assertion of its claim. Now it will be noted that the jurisdiction of the District Court of New Jersey here exercised arises, not by diversity of citizenship, or on any other of the usual grounds of federal jurisdiction, but is wholly statutory, and depends on subject-matter and location, viz.: "He or they shall have a right of action, and shall be, and are hereby authorized to bring suit in the name of the United States in the Circuit [now District] court of the United States in which said contract was to be performed and executed, irrespective of the amount in controversy in such suit and not elsewhere." Such being the situation, no statutory authority for the Witherow Steel Company to use the name of the United States in this attempted second suit on the bond existed, and the court below had no statutory jurisdiction vested in it to entertain such suit. Certain it is the Witherow Steel Company, the use-party in such suit, had to invoke the authorization of the statute to sustain the suit; but the statute it invoked, and by virtue of which it asserts the jurisdiction of the court, not only did not warrant a second suit, but expressly forbade it. Both by duplicating the first suit and by failing to file its claim in that first suit, the Witherow Steel Company left its claim in a situation where the power of the court below to enforce it was gone. It follows, therefore, that when that court, on November 9, 1922, more than 16 months after the final settlement of April 15, 1921, made a nunc pro tunc order, in which it was sought to restore to the Witherow Steel Company the status and rights which the statute had extinguished, it exceeded its powers. The claim of the Witherow Steel Company is therefore denied.

The record will be remanded to the court below for due procedure in accordance with this opinion.