**UNITED STATES ex rel. and to Use of ROBERT S. GREEN, Inc., v. C. & W. CONST. CO., Inc., et al.**

No. 6046.

District Court, D. Maryland.

Oct. 5, 1937.

O. Bowie Duckett Jr., of Baltimore, Md., for plaintiff.

Walter L. Clark and Roszel C. Thomsen, both of Baltimore, Md., for defendants.

WILLIAM C. COLEMAN, District Judge.

This is a case arising under the Heard Act, 40 U.S.C.A. § 270 (repealed in 1935 [49 Stat. 794, 40 U.S.C.A. § 270a and note et seq.] except with respect to certain current contracts, such as those in the present proceeding), providing for the protection of persons furnishing material and labor for the construction of public works.

The present plaintiff, the Pennsylvania Railroad Company, is one of many interveners, pursuant to the terms of this act, against the construction company and its surety, and claims that it has furnished "labor" for the construction company in connection with the erection of certain government buildings at Aberdeen, Md. That is, it would have this court construe

the word "labor" as used in this act to cover freight and demurrage charges for goods transported by it for the contractor. The defendant company has demurred to the petition of this intervener on the ground that the freight and demurrage charges do not constitute "labor" within the meaning of the act. This court feels that the demurrer should be sustained.

The precise question appears, from the reported cases, to be original in this circuit. At least, the Circuit Court of Appeals for this circuit has never passed upon this precise point arising under the Heard Act. Nevertheless, we believe that that court, in the case of Maryland Casualty Company v. Ohio River Gravel Company, 20 F.(2d) 514; Id. (C.C.A.) 21 F. (2d) 744, has expressed itself very definitely as supporting the view which we now take in sustaining the demurrer. The Circuit Court of Appeals there was dealing with a state statute and also with a case where the claimant of the freight charges was not, as here, the common carrier itself, but the seller of materials on which he was required to pay freight as part of their cost. The case of Mandel v. United States, a decision of the Third Circuit Court of Appeals, reported in 4 F.(2d) 629, in which certiorari, by the Supreme Court, was denied (see 268 U.S. 698, 45 S.Ct. 515, 69 L.Ed. 1163), and similar decisions were carefuly considered, and this factual distinction stressed as the basis for allowing recovery of the freight charges.

In the Mandel Case the precise question which we now have before us was at issue, and the claim was brought in the precise way, namely, by a railroad company. There the court said, 4 F.(2d) 629, at page 631: "The question therefore is: Was the claim of the railroad for freight and demurrage recoverable under the statutory bond, conditioned that the contractors 'shall promptly make payments to all persons supplying him or them labor and materials in the prosecution of the work provided for in such contract'? The court below allowed these items but we cannot accede to this view. The words 'labor and material,' used by Congress in this statute, are plain words of well-understood meaning, and in the common use and acceptance car demurrage and car freight are not described or embraced by the words 'labor and material.' Moreover, there is no call for the exercise of judicial construction to give to demurrage and freight the protection of this statutory bond. There was a real hardship to labor and material men who worked upon, or furnished material for, a structure or improvement on government property. They could have no lien and no way of protecting themselves. Accordingly the statute required from the contractor a statutory bond and approved surety responsibility for the protection of unprotected labor and material. But the railroad required no such protection. It could refuse to deliver to the contractor until both freight and demurrage were paid. Hence neither the words of the bond allow, nor the spirit and purpose of the law require, that judicial construction to enlarge or construe the words 'labor and material' so as to include freight and demurrage."

From the language employed in the Ohio River Gravel Company Case by the Fourth Circuit Court of Appeals, particularly when that case was before it on rehearing (see 21 F.(2d) 744), there can be no doubt that its ruling was not intended to apply to the present state of facts. The court there said, pages 744, 745:

"We have carefully considered all of the questions raised in the petition for rehearing, but we see no reason to grant the petition as all of them were given careful consideration on the original hearing. We desire to notice, however, the statement in the petition that the decision of the court with respect to the freight included in the claim for sand and gravel conflicts with the decision of the Supreme Court in the case of Title Guaranty & Trust Co. v. Crane Co., 219 U.S. 24, 31 S.Ct. 140, 55 L.Ed. 72, and with the holdings of the Circuit Courts of Appeals of the Third and Fifth Circuits in Mandel v. U. S., 4 F.(2d) 629, and U. S. v. Hyatt, 92 F. [442] 445.

"In the Crane Case, the appeal was by the surety company from a decree allowing a claim for cartage by a transfer company, but disallowing a claim for freight which it had paid. The Supreme Court affirmed the allowance of the claim for cartage, but the question as to freight was not before it, as the transfer company did not appeal. On that aspect of the case, however, the case before the Circuit Court of Appeals of the Ninth Circuit, Title Guaranty & Trust Co. v. Puget Sound Engine Works, 163 F. 168, was different from the case at bar, in that the person who paid the freight was not the furnisher

of materials, nor did he make payment thereof under such circumstances that it became in reality a part of the price of the materials, as in the case at bar.

"The same distinction exists with respect to the cases cited from the Third and Fifth circuits, both of which related to claims by railway companies for freight charges. We were careful to point out this distinction in our original opinion, but that part of the opinion was evidently overlooked by counsel.

"We have examined with some care the cases dealing with the point involved and with kindred points, and we are satisfied, not only that our decision is correct, but also that there is nothing in it which conflicts with any decision of the Supreme Court or of any Circuit Court of Appeals."

It is true that some slight doubt may be cast upon the binding effect of the Ohio River Gravel Company Case by what Judge Northcott said in an opinion, some seven years later, rendered for the Fourth Circuit Court of Appeals in American Liability & Surety Company v. Bluefield Supply Company, 70 F.(2d) 187, 190. It would appear, and this court understands counsel to concede, that one of the points there raised was a claim made directly by a railroad itself for freight charges, but, again, the Circuit Court of Appeals did not have before it the Heard Act, but a statute of West Virginia relating to the construction of state highways. In dealing with this precise question in the American Liability & Surety Company Case, Judge Northcott said: "Many of the questions involved here were discussed by Judge Parker, of this court, in an·able opinion in the Ohio River Gravel Company Case, 20 F.(2d) 514, where this court held that the surety on the bond was liable for freight charges for the carrying of materials used in the work of construction where the charges had been paid by the shipper; here the freight charges are for an unpaid balance of the freight resulting from an error in the original charge. We do not think this is a material difference and are of the opinion that the freight charges were a proper part of the cost of the material laid down at the place of construction and that the surety should be liable for the freight charges as well as for the materials furnished."

It is further true that Judge Northcott also sat in the Ohio River Gravel Company Case with Judge Parker, who rendered the decision seven years earlier, in that case; and also that Judge Parker was one of the judges concurring in the later opinion of the court by Judge Northcott. It therefore must be admitted that the above quotation from Judge Northcott's later opinion is calculated to give rise to some confusion in this circuit. On the other hand, as already mentioned, the Circuit Court of Appeals for this circuit was not dealing, in either case, with the precise question which this court now has before it, namely, an interpretation of the Heard Act with respect to a common carrier's claim for freight charges. Therefore, this court prefers to follow the Mandel Case, and believes that this is the more consonant with the Fourth Circuit Court of Appeals' view.

There is a very definite, square conflict between the Third and Fifth Circuits on this point, because the decision in Standard Accident Insurance Company v. United States, decided only a few months ago by the Circuit Court of Appeals for the Fifth Circuit, 89 F.(2d) 658, is directly opposed to the decision of the Third Circuit in the Mandel Case above referred to, and indeed expressly overrules the earlier view of the Fifth Circuit as laid down in United States v. Hyatt (C.C. A.) 92 F. 442. But suffice it to say, finally, that this court, in addition to its apparent obligation to follow the doctrine of the Mandel Case, is more impressed with the reasoning of that case than with anything that is said by the Circuit Court of Appeals for the Fifth Circuit in its opinion in the Standard Accident Insurance Company Case, or in any of the decisions referred to in that opinion.

An order will be signed in conformity with these views.