**UNITED STATES, to Use of WATSA-BAUGH & CO., et al. v. SEABOARD SURETY CO. et al. (INTERSTATE HEATING & PLUMBING CO. et al., Interveners).**

No. 878.

District Court, D. Montana, Butte Division.

June 22, 1938.

682

Corette & Corette and R. D. Corette, all of Butte, Mont., Hotz & Hotz, of Omaha, Neb., and R. F. Gaines, of Butte, Mont., for plaintiffs.

John G. Brown and William A. Brown, both of Helena, Mont., and Alfred C. Munger, of Omaha, Neb., for defendants.

Corette & Corette and Robert D. Corette, all of Butte, Mont., and Hotz & Hotz, of Omaha, Neb., for interveners Construction Products Co. and Griffith & Doran.

Corette & Corette and Robert D. Corette, all of Butte, Mont., and Paul A. Floersch and Hotz & Hotz, all of Omaha, Neb., for interveners Interstate. Heating & Plumbing Co. and Baker Mfg. Co.

Walker & Walker, of Butte, Mont., and Gunn, Rasch & Hall, of Helena, Mont., for intervener Northern Pac. Ry. Co.

James T. Fitzgerald, of Butte, Mont., for intervener Copper City Coal & Wood Co.

John K. Claxton and Phil O'Donnell, both of Butte, Mont., for intervener Texas Co.

Corette & Corette and Robert D. Corette, all of Butte, Mont., and Hotz & Hotz, of Omaha, Neb., for interveners Trane Co. and Buffalo Forge Co.

Corette & Corette and Robert D. Corette, all of Butte, Mont., and Ralph West and Hotz & Hotz, all of Omaha, Neb., for intervener Grace-Mayer Co.

Matthew A. Hall and Raymond G. Young, both of Omaha, Neb., for intervener James P. Marsh Corporation.

Morsman & Maxwell, of Omaha, Neb., for intervener United States Nat. Bank, of Omaha, Neb.

N. A. Rotering, of Helena, Mont., for intervener Pioneer Fuel & Brick Co.

P. E. Geagan and George W. Howard, both of Butte, Mont., for intervener Morley & Thomas Co.

Kain Granite Co., intervener, in pro. per.

N. A. Rotering, of Helena, Mont., for intervener Edward Stamsos. ·

Jeremiah J. Lynch, of Butte, Mont., for intervener Walter J. Sewell, doing business under name and style of W. J. Sewell Hardware Co.

R. F. Gaines, of Butte, Mont., for intervener Roddis Lumber & Veneer Co., of Marshfield, Wis.

Corette & Corette, of Butte, Mont., for interveners Butte Machinery Co., and P. G. Dotti, doing business under name and style of Montana Ornamental Iron & Wire Works.

Corette & Corette, of Butte, Mont., and Robert R. Pence, of Spokane, Wash., for intervener Union Sash & Door Co.

BALDWIN, District Judge.

A. M. Lundberg entered into a contract with the United States for the construction of extensions to and remodeling of the United States Post Office and United States Courthouse Building at Butte, Montana, a public building, and executed the usual penal bond with the Seaboard Surety Company, a corporation, as surety, with the additional obligation that such contractor shall promptly make payments to all persons supplying him with labor and materials in the prosecution of the work provided for under such contract as required by the provisions of the Act of August 13, 1894, as amended, Acts of August 13, 1894, c. 280, 28 Stat. 278, Feb. 24, 1905, c. 778, 33 Stat. 811, Mar. 3, 1911, c. 231. Sec. 291, 36 Stat. 1167, Sec. 270, Title 40, U.S.C., 40 U.S.C.A. § 270. Thereafter and on February 2, 1932, it was agreed by and between said A. M. Lundberg and Watsabaugh & Company, the plaintiff herein, that Watsabaugh & Company would provide all the materials and perform all the work for the lathing, plastering and iron furring required for the construction of said extensions to and the remodeling of said building as shown by the drawings and described in the specifications prepared by the supervising architect and that Lundberg would pay Watsabaugh & Company the sum of $11,100 for said work and materials.

On February 15, 1932, it was agreed by and between said A. M. Lundberg and Interstate Heating and Plumbing Company, a corporation, that the latter would "provide all the materials and perform all the work for the plumbing, sanitary and roof drainage, heating apparatus and ventilating in the present Post Office at Butte, Montana, and the additions thereto as shown on the drawings and described in the specifications prepared by the supervising architect;" and, that Lundberg would pay it therefor the sum of $28,100.

While Watsabaugh & Company and the Interstate Heating and Plumbing Company were doing the work they were required to do under these agreements, but before their part of the agreements had been fully complied with, Lundberg became financially involved and as a result was unable to complete the construction of the extensions to and the remodeling of the United States Courthouse Building at Butte, Montana, and Watsabaugh & Company and Interstate Heating and Plumbing Company refused to complete the work they had undertaken to do and failed to pay a number of persons who had supplied them with labor and materials used in the prosecution of the work they had agreed to do.

Thereafter the defendant Seaboard Surety Company was compelled to and did take over and completely perform the work required to be done under the contract between A. M. Lundberg and the United States and the same was accepted and final settlement of said contract was made by the United States on May 11, 1934.

No suit was brought by the United States within six months from the completion and final settlement of said contract and on November 14, 1934, this suit was brought by Watsabaugh & Company in the name of the United States to the use of Watsabaugh & Company and all others similarly situated.

It appears from the petition filed herein by Watsabaugh & Company in the name of the United States of America, as aforesaid, that persons who had supplied Watsa-

baugh & Company with materials in the prosecution of the work provided for in such contract between it and said A. M. Lundberg had not been paid for the materials furnished. The names of the persons who had supplied said materials and the amount then due and owing to each of them at that time, as stated in said petition, are as follows:

| | |
|---|---:|
| Interstate Lumber Company | $ 774.00 |
| Interstate Lumber Company | 79.70 |
| C. & F. Teaming and Trucking Co. | 106.90 |
| Construction Products Company | 734.14 |
| Copper City Coal and Wood Co. | 425.25 |
| Griffiths & Doran | 356.29 |
| Missoula Mercantile Co. | 5.90 |
| Montana Hardware Company | 32.70 |
| Pioneer Brick & Fuel Company | 47.04 |
| W. J. Sewell Hardware Co. | 58.10 |
| U. S. Gypsum Company | 1,866.53 |
| Westinghouse Electric Supply Co. | 2.53 |
| Grace-Mayer Company | 137.50 |
| | $4,326.58 |

and,

"That in addition to the foregoing accounts for material and labor furnished to Watsabaugh & Company by said respective above mentioned parties, the said Watsabaugh & Company has made assignments of the balance due it from the defendants of the following sums to the following persons, to-wit:

"1. Ohio Casualty Insurance Co., Hamilton, Ohio .................................... $2293.99
"2. United States National Bank, Omaha, Neb. with interest at six per cent (6%) interest from April 14, 1934.............. $3007.00

"Subtotal .......................... $5300.99"

It appears from the "Petition of Intervention" filed by said Interstate Heating and Plumbing Company herein on April 26, 1935, as follows, to-wit:

"7. That the unpaid labor and material bills with the names and addresses and amounts of each are herewith set forth as follows, to-wit:

1. Montana Hardware Company.......... $ 886.19
   Butte, Montana
2. Western Plumbing and Electric Company .................................. 33.83
   Butte, Montana
3. The Trane Company..................... 75.00
   La Crosse, Wisconsin
4. Keasbey & Mattison Company.......... 679.84
   Ambler, Pennsylvania
5. A. Y. McDonald Manufacturing Company .................................. 315.84
   1201 Dodge Street
   Omaha, Nebraska
6. Buffalo Forge Company................. 305.00
   Buffalo, New York

7. Butte Painting & Decorating Company 98.61
   33 South Main Street
   Butte, Montana
   Butte Painting & Decorating Company 414.38
   33 South Main Street
   Butte, Montana
8. Montana Ornamental Iron & Wire Works .................................. 72.51
   102 South Arizona Street
   Butte, Montana
9. Minneapolis-Honeywell Regulator Company .................................. 383.00
   Minneapolis, Minnesota
10. James P. Marsh Corporation....:...... 426.82
    2073 Southport Avenue
    Chicago, Illinois
11. Linde Air Products Company........... 10.00
    599 Eighth Street
    San Francisco, California
12. Fell & Pinkerton Company.............. 33.78
    635 Keeline Building
    Omaha, Nebraska

    Sub-total ......................... $3,639.80
    Amount Carried forward........ $3,639.80
13. Hans Schatte....For labor.............. 243.90
    3318 Jackson Street
    Omaha, Nebraska
14. Baker Manufacturing Company........ 3,436.21
    817 Douglas Street
    Omaha, Nebraska
15. Charles M. Gates....for labor.......... 254.00
    321 North Jackson Street
    Butte, Montana
16. Dryman-Nevin ........................ 45.20
    Butte, Montana
17. C. & F. Teaming and Trucking Company .................................. 158.29
    1300 Chicago Street
    Butte, Montana
18. Dick Eva....for labor................... 38.92
    Butte, Montana

    Total ........................ $7,916.32"

"8. That the payments made by the said A. M. Lundberg were as follows:

| | | |
|---|---|---:|
| May | 5, 1932 | $ 650.00 |
| June | 16, 1932 | 3,500.00 |
| July | 20, 1932 | 6,300.00 |
| August | 20, 1932 | 1,620.00 |
| October | 5, 1932 | 300.00 |
| October | 22, 1932 | 2,535.00 |
| November | 19, 1932 | 4,302.00 |
| December | 21, 1932 | 2,293.00 |
| | Total | $21,500.00" |

Many persons who claimed that they had supplied labor and materials used in the prosecution of the work provided for in contracts entered into by A. M. Lundberg, the original contractor, and Watsabaugh & Company and Interstate Heating and Plumbing Company, sub-contractors, intervened in the action.

The case came duly and regularly on for trial and the following proceedings were had: The claims of the interveners George Davenport, doing business as Cop-

per City Wood & Coal Co.; Pioneer Fuel and Brick Co.; Edward Stamsos; P. G. Dotti, doing business as Montana Ornamental Iron & Wire Works; Butte Machinery Company; Trane Co.; Buffalo Forge Co.; Walter J. Sewell; Roddis Lumber and Veneer Co.; The Texas Co.; The Union Sash & Door Co.; and, Kain Granite Co. were disposed of as settled on the merits without trial pursuant to stipulation of the parties; and, the petition in intervention of the James P. Marsh Corporation was dismissed for want of prosecution.

The attorneys of record for the remaining parties litigant agreed to waive a jury by a stipulation in writing filed with the clerk; it was ordered that the issues of fact herein shall be tried and determined by the court; and, thereupon it was agreed by counsel for all parties expressed in open court and entered in the minutes that the only claims at issue and to be tried are as follows:

First. Watsabaugh & Company claim; claims therein contained of: Interstate Lumber Company (2 claims); Construction Products Company; Copper City Coal & Wood Company; Griffith & Doran; United States Gypsum Company; and, Grace-Mayer;

Second. Interstate Heating and Plumbing Company claim; claims therein contained of: Montana Hardware Company; Keasbey & Mattison Company; A. Y. McDonald Manufacturing Company; Minneapolis-Honeywell Company; Linde Air Products Company; Fell & Pinkerton Company; and, Baker Manufacturing Company;

Third. Morley & Thomas Company claim;

Fourth. Baker Manufacturing Company claim; and,

Fifth. Grace-Mayer Company claim.

Thereafter and during the trial of the case it was stipulated by counsel for the respective parties litigant in open court and entered in the minutes that the claim of the Baker Manufacturing Company had been settled and that an order and judgment might be entered for $3,500 without costs to either party; whereupon the court ordered judgment entered accordingly, the same to be entered in a final judgment; on motion of counsel for the defendant Seaboard Surety Company the court ordered that judgment be entered herein in favor of the Linde Air Products Company and against said defendant for the sum of $10;

and, it was stipulated and agreed by counsel for the respective parties litigant in open court and entered upon the minutes that the claim of the Interstate Heating and Plumbing Company had been fully paid and that the only question now remaining and submitted to the court in reference to said claim is the matter of costs and attorney's fees.

From the evidence introduced during the trial of the case it appears and the court finds the facts to be as follows:

1. That all of the claims contained in the claim of Watsabaugh & Company, as hereinbefore set out, have been settled and finally disposed of by the defendant Seaboard Surety Company, excepting only the claim of Grace-Mayer Company for $137.50;

2. That the amount claimed by each of the claimants whose claims are contained in the claim of Watsabaugh & Company as hereinbefore set out was the reasonable value on the market of the materials for which claim was made at the time when and the place where they were supplied by said claimants to Watsabaugh & Company for use in the prosecution of the work provided for in the said agreement between A. M. Lundberg and Watsabaugh & Company, as well as the price which Watsabaugh & Company agreed to pay the claimants therefor;

3. That in making settlement and disposition of said claims so settled and disposed of as aforesaid the defendant Seaboard Surety Company did pay to the claimants from its own funds the entire amount of the claim as made except as stated in the next paragraph;

4. That the names of the claimants whose claims are contained in the Watsabaugh & Company claim as hereinbefore set out whose claims were not paid in full, as aforesaid, the amounts of the various claims as made; and, the sum actually paid by the defendant Seaboard Surety Company from its own funds in settlement thereof, are as follows, to-wit:

| Name | Amount Claimed | Sum Paid | |
|---|---|---|---|
| Interstate Lumber Co. | $ 474.00 | $ 426.40 | |
| Interstate Lumber Co. | 79.70 | 71.73 | |
| Construction Products Co. | 734.14 | 679.94 | |
| Copper City Coal & Wood Co. | 425.25 | 382.73 | |
| Griffith & Doran | 356.29 | 320.67 | |
| United States Gypsum Co. | 1866.53 | 1773.20 | |
| Total | $3935.91 | $3654.67 | |
| To Balance | | | $281.24 |

5. That all of the claims contained in the claim of the Interstate Heating and Plumbing Company as hereinbefore set out have been settled and finally disposed of by the defendant Seaboard Surety Company, excepting only the claim of Fell & Pinkerton Company for $33.78;

6. That the defendant Seaboard Surety Company paid to Ohio Casualty Insurance Company of Hamilton, Ohio, and that company received and accepted from said defendant in full settlement and satisfaction of the claim of the Ohio Casualty Insurance Company based on the assignment by Watsabaugh & Company to it as set out in paragraph "13" of the petition at law filed herein by Watsabaugh & Company, in the name of the United States of America, on November 14, 1934, the sum of $2,293.99;

7. The actual and reasonable and necessary cost to the defendant Seaboard Surety Company of supplying the labor and materials necessary for use and actually used in the work provided for in said agreement between A. M. Lundberg and Watsabaugh & Company remaining to be done thereunder at the time Watsabaugh & Company refused to complete the work they had undertaken to do under said agreement and the defendant Seaboard Surety Company was compelled to and did take over the completely perform said work as required by said agreement, is $3,486.55;

8. That the defendant Seaboard Surety Company deposited with the clerk of this court to the credit of the Baker Manufacturing Company in full settlement of the judgment ordered entered herein in favor of the Baker Manufacturing Company and against the defendant Seaboard Surety Company the money necessary to pay said claim, that is to say the sum of $3,500;

9. That all claims of every kind and character made herein against the defendant Seaboard Surety Company have been fully settled, paid for and finally disposed of on the merits, excepting only:

The claim of Watsabaugh & Company:

(a) For a balance claimed to be due to it on said contract between it and A. M. Lundberg, including the difference between the sums Watsabaugh & Company agreed to pay for materials supplied to it for use and by it actually used in the prosecution of the work provided for in said contract between A. M. Lundberg and the sums

actually paid by the defendant Seaboard Surety Company in settlement for the same;

(b) For loss of profits on said job with interest thereon; and,

(c) For attorney's fees and costs;

The claim of Interstate Heating and Plumbing Company for attorney's fees and costs;

The claim of Grace-Mayer Company on account of workingmen's compensation insurance furnished by it to Watsabaugh & Company......$137.50;

The claim of Fell & Pinkerton Company on account of workingmen's compensation insurance furnished by it to Interstate Heating and Plumbing Company ................$33.78; and,

The claim of Morley & Thomas Company on account of workingmen's compensation insurance furnished by it for the protection of workmen who were employed by A. M. Lundberg in the prosecution of the work provided for in said contract between he and the United States of America for the construction of extensions to and the remodeling of the United States Post Office and United States Courthouse Building at Butte, Montana;

10. It is stated in the petition at law filed herein in the name of the United States of America by Watsabaugh & Company on November 14, 1934, as follows, to-wit:

"12. That the following list of unpaid material-men's accounts for material furnished Watsabaugh & Company and used in said Butte job was duly furnished said surety company and properly certified and sworn to by the respective material-men on and at numerous times since March 1, 1933; that said unpaid material-men, with their names and addresses and amounts due are hereinafter set forth, and the plaintiff states that it will be unnecessary to notify said parties of the pendency of this action unless each of such persons fails to file forthwith his petition of intervention; that plaintiff agrees that all their claims be paid first from any and all sums found due and owing to Watsabaugh & Company from said defendants, Seaboard Surety Company, a corporation, and A. M. Lundberg:

\* \* \* \* \* \*

"12. Grace-Mayer Company..................... $137.50
"1102–03 City National Bank Building
"Omaha, Nebraska"

11. It is stated in the petition of intervention filed by Interstate Heating and Plumbing Company herein on November 23, 1934, as follows, to-wit:

"7. That the unpaid labor and material bills with the names and addresses and amounts of each are herewith set forth as follows, to-wit:

\*  \*  \*  \*  \*  \*

"12. Fell & Pinkerton Company.................. $33.78
    "635 Keeline Building
    "Omaha, Nebraska"

12. There is no dispute concerning the amount claimed to be due to it in the petition in intervention filed herein by Morley & Thomas Company on December 10, 1934; and,

13. That at all of the times hereinbefore mentioned a statute requiring that all persons who employed labor in the prosecution of the work provided for in said contracts between A. M. Lundberg and the United States of America, A. M. Lundberg and Watsabaugh & Company; and, A. M. Lundberg and Interstate Heating and Plumbing Company must provide workmen's compensation insurance for the protection of such labor before entering upon the performance of the work was in effect.

On this record the court is called upon to determine:

First. The state of the account between Watsabaugh & Company and the defendant Seaboard Surety Company;

Second. Whether Interstate Heating and Plumbing Company is entitled to attorney's fees and costs herein; and,

Third. Whether the claims of Grace-Mayer Company and Fell & Pinkerton Company and Morley & Thomas Company are covered by the bond executed by said A. M. Lundberg as principal with the defendant Seaboard Surety Company as surety as hereinbefore stated.

A proper statement of the account between Watsabaugh & Company and the defendant Seaboard Surety company requires that the court shall decide, as a matter of law, the following questions:

1. Are Watsabaugh & Company entitled to credit for the difference between the amounts they agreed to pay for the materials supplied to them by others for use and used by them in the prosecution of the work provided for in said contract between A. M. Lundberg and Watsabaugh & Company and the amounts actually paid by the defendant Seaboard Surety Company in settlement of the same after this action had been brought?

2. Have Watsabaugh & Company a right to recover from the defendant Seaboard Surety Company the amount necessary to compensate them for the loss, if any, suffered by them because of delays growing out of the acts and omissions of others?

3. Should the necessary cost of providing workingmen's compensation insurance for the protection of laborers employed by them to do the work they were required to do under the terms and provisions of said agreement between A. M. Lundberg and Watsabaugh & Company be charged against the latter?

It appears to me that the statement of the first question carries its own answer. In my opinion Watsabaugh & Company are intellectually dishonest in making this claim. Its position is this: 1. We contracted to provide all the materials and perform all the work for the lathing, plastering and iron furring required in the Post Office Building at Butte, Montana; 2. Others supplied us with materials used in the prosecution of the work provided for in such contract at our request for which we agreed to pay a fixed price; 3. We failed and refused to provide all the materials and perform all the work necessary to a completion of our contract and failed and refused to pay to those who supplied us with materials used in the prosecution of the work we were required to do the price we agreed to pay therefor, or any part of it; 4. As a result the defendant Seaboard Surety Company was compelled to and it did complete the work we had promised to do at its own expense and paid for the materials we bought and used but did not pay for from its own funds; 5. Under the conditions then existing and because of our failure to do what we were legally and morally bound to do the persons we owed were willing to accept from the defendant Seaboard Surety Company for the purpose of avoiding further litigation something less than we had agreed to pay for the materials we bought and used but did not pay for; and, 6. We should now be paid the difference between the amount which we agreed to pay and should have paid for the materials we bought and used but did not pay and the amount that the defendant Seaboard Surety Company was compelled

by legal process to pay from its own funds in settlement· of our obligations because we failed and refused to do what we were legally and morally bound to do.

It appears to me that it is to meet just such a situation as this that it is written: "No one can take advantage of his own wrong." Section 8746, Revised Codes of Montana, 1921 and 1935.

It follows that the contention of Watsabaugh & Company that it is entitled to credit for the difference·between the sums Watsabaugh & Company agreed to pay for materials supplied to it by others for use and actually used by it in the prosecution of the work provided for in said contract between A. M. Lundberg and the Watsabaugh·. & Company· and the sums actually paid by the defendant Seaboard Surety Company in settlement of the same cannot be sustained.

Its second contention is also without merit. .

▆▆▆ The statute in force at the time the bond involved in this action was executed and delivered provided, among other things: "Any person or persons entering into a formal contract with the United States for the construction· of any public building, or the prosecution and completion of any public work, * * *, shall be required, before commencing such work, to execute the usual penal bond, · [meaning evidently such an obligation for the government's own protection as it had long been in the habit of exacting from those with whom contracts were made for the doing of public .work. Title Guaranty & Trust Co. ·v. Puget Sound Engine Works, 9 Cir., 163 F. 168, 174; United States ·v. National· Surety Co., 8 Cir., 92 F. 549, 551] with good and sufficient sureties, with the·additional obligation that such contractor or contractors shall promptly make payments · to all persons supplying him or them· with labor and materials in the ·prosecution. of the work provided for in such contract; * * *." Acts of Aug. 13, 1894, c. 280, 28 Stat. 278, Feb. 24, 1905, c. 778, 33 Stat. 811, Mar. 3, 1911, c. 231, Sec. 291, 36 Stat. 1167, Sec. 270, Title 40, U.S.C., 40. U.S.C.A. § 270.

It is said in U. S. to Use of Hill v. American Surety Company, 200 U.S. 197, 203, 26 S.Ct. 168, 170, 50 L.Ed. 437: "The purpose of the law is, as its title declares: 'For the protection of persons furnishing materials and labor for· the construction of public · works;'" which evidently does not include a guarantee of profits which a contractor or subcontractor may expect to make, or a promise to make good any loss that either of them may suffer. If such had been the Congressional intent it would have been easy to express it in plain words. This was not done; and, on the other hand Congress limited the right to bring suit on the bond in the name of the United States to "the person or persons supplying the contractor with labor or materials" and to them only upon "furnishing affidavit to the department under the direction of which said work has been· prosecuted that labor and materials for the prosecution of such work has been supplied by him or them, and payment for which has not been made." The bond involved in this case appears to be conditioned as provided in this statute and it must be read in the light of the true intent and purpose of the act. Sample v. Murray Hospital, 103 Mont. 195, 201, 62 P.2d 247.

To hold that Watsabaugh & Company have a right to recover from the defendant Seaboard Surety Company for the loss, if any, suffered by them because of delays growing out of the acts or omissions of others would be to add to the terms of the agreement. This the law does not permit. In the construction of an instrument the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted. Sec. 10519, Revised Codes of Montana, 1921 and 1935; Gibbons v. Huntsinger, 105 Mont. 562, 573, 74 P.2d 443, 449. It follows that Watsabaugh & Company have no right to recover ·from the defendant Seaboard Surety Company for the loss, if any, suffered by them because of delay growing out of· acts or omissions of ·others.

We now turn to the third question,— should the necessary cost· of providing workingmen's compensation insurance for the ·protection of laborers employed by it to do the work ·it was required to do under the terms and provisions of said agreement between A. M. Lundberg and them b·e charged against Watsabaugh & Company?

▆▆▆ It cannot be doubted that the courts of this country have generally given to statutes intended to secure those furnishing labor and supplies for the construction of public building's a liberal interpretation, with a view of effecting their purpose to

require payment to those who have contributed by their labor or material to the erection of buildings to be owned and enjoyed by those who profit by the contribution of such labor or materials, and the rule which permits a surety to stand upon his strict legal rights, when applicable, does not prevent a construction of the bond with a view to determining the fair scope and meaning of the contract in the light of the language used and the circumstances surrounding the parties. U. S. to Use of Hill v. American Surety Co., 200 U.S. 197, 203, 26 S.Ct. 168, 50 L.Ed. 437; Title Guaranty & Trust Co. v. Puget Sound Engine Works, 9 Cir., 163 F. 168, 174; Illinois Surety Co. v. John Davis Co., 244 U.S. 376, 380, 37 S.Ct. 614, 61 L.Ed. 1206.

In Brogan v. National Surety Company, 246 U.S. 257, 38 S.Ct. 250, 62 L.Ed. 703, L.R.A.1918D, 776, Mr. Justice Brandeis, speaking for the court, observed [page 251]: "This court has repeatedly refused to limit the application of the act to labor and materials directly incorporated into the public work."

In that case the court held that groceries and provisions supplied to the contractor who "was compelled to provide board and lodging for its laborers" because of the conditions existing at the point of operation fell within the provisions of a bond similar to that in the instant case for the reason as stated that "they were necessary to and wholly consumed in such work." (page 260, 38 S.Ct. page 251).

■ It has long been held:

First. That besides securing the United States the Act involved in this proceeding is intended to protect persons furnishing materials or labor for the construction of public works as the title declares. Title Guaranty & Trust Co. v. Crane Co., 219 U.S. 24, 31, 32, 31 S.Ct. 140, 55 L.Ed. 72; Equitable Casualty & Surety Co. v. Helena Wholesale Grocery Co., 8 Cir., 60 F.2d 380; Illinois Surety Co. v. John Davis, 244 U. S. 376, 380, 37 S.Ct. 614, 61 L.Ed. 1206; United States to Use of J. E. Sadler & Co. v. W. H. French Dredging & Wrecking Co., D.C.Del., 52 F.2d 235, 238;

Second. That it should be given a liberal interpretation with a view of effecting its purpose to require payment to those who have supplied labor or materials for the construction of any public building or the prosecution or completion of any public work. U. S. to Use of Hill v.

American Surety Co., 200 U.S. 197, 203, 26 S.Ct. 168, 50 L.Ed. 437; Illinois Surety Co. v. John Davis Co., 244 U.S. 376, 380, 37 S.Ct. 614, 61 L.Ed. 1206. In the last case cited Mr. Justice Brandeis, speaking for the court, said [page 616]: "Decisions of this court have made it clear that the statute and bond given under it must be construed liberally, in order to effectuate the purpose of Congress as declared in the act." and,

Third. That courts should refuse to limit the application of the Act to labor and materials directly incorporated in the public building or work. Brogan v. National Surety Company, 246 U.S. 257, 261, 38 S.Ct. 250, 62 L.Ed. 703, L.R.A.1918D, 776. In that case Mr. Justice Brandeis, again speaking for the court, pointedly observed: "This court has repeatedly refused to limit the application of the act to labor and materials directly incorporated into the public work."

■ While each case must be considered in the light of its own particular facts, it is generally held that anything that is indispensable to the work contracted for falls within the meaning of the words "labor and materials" as used in the Heard Act, Sec. 270, Title 40, U.S.C., 40 U.S.C.A. § 270.

In Title Guaranty & Trust Co. v. Crane Co., 219 U.S. 24, 34, 31 S.Ct. 140, 55 L.Ed. 72, the claim for which recovery was allowed under the bond included not only cartage and towage of material, but also claims for drawings and patterns used by the contractor in making molds for castings which entered into the construction of the ship contracted for.

In United States Fidelity & Guaranty Co. v. U. S. for Benefit of Bartlett, 231 U.S. 237, 34 S.Ct. 88, 58 L.Ed. 200, where the work contracted for was building a breakwater, recovery was allowed for all the labor at a quarry operated fifty (50) miles away. This included the labor not only of the men who stripped the earth to get at the stone and remove the débris, but carpenters and blacksmiths who repaired the cars in which the stone was carried to the quarry directly for shipment and who repaired the tracks upon which the cars moved. The claims allowed included also the wages of stablemen who fed and drove the horses who moved the cars on those tracks.

In Illinois Surety Co. v. John Davis Co., 244 U.S. 376, 37 S.Ct. 614, 61 L.Ed.

1206, recovery was allowed not only for the rental of cars, tracks and other equipment used by the contractor in facilitating his work, but also the expense of loading the equipment and the freight paid thereon to transport it to the place where it was used.

In Brogan v. National Surety Co., 246 U.S. 257, 38 S.Ct. 250, 62 L.Ed. 703, L.R.A. 1918D, 776, it appears that the contractor undertook to deepen the channel of portion of the St. Mary's River, Michigan, located in a "comparative wilderness at some distance from any settlement. There were no hotels or boarding houses" and the contractor "was compelled to provide board and lodging for its laborers." Groceries and provisions to the value of $4,316.87 were furnished by Brogan for use by the contractor in its boarding house. They were necessary to and wholly consumed in the work. The number of men employed averaged eighty (80). They were "boarded" partly on the dredge, and partly in tents supplied by the contractor; all under arrangements made with the labor unions —by which the contractor was to board the men and deduct therefor $22.50 a month from their wages. The contract and bond executed by the National Surety Co. bound the contractor to "make full payment to all persons supplying him with labor or materials in the prosecution of the work provided for in" the contract.

The District Court held that the groceries and provisions furnished to the contractor by Brogan were within the meaning of the statute involved in that case and in this case, Sec. 270, Title 40, U.S.C., 40 U.S.C.A. § 270, and the condition of the bond upon which that action was based. The Circuit Court of Appeals Ninth Circuit, National Surety Co. v. U. S., 228 F. 577, L.R.A.1917A, 336, deemed immaterial the special circumstances under which the supplies were furnished and the findings of fact by the trial court that they were necessary to and wholly consumed in the prosecution of the work provided for in the contract involved; and reversed the judgment of the District Court. In reversing the judgment of the Circuit Court of Appeals and affirming the judgment of the District Court the Supreme Court said: "In our opinion these facts are not only material, but decisive. They establish the conditions essential to liability on the bond;" and, further: "according to the undisputed facts and the findings of the

trial court, the furnishing of board by the contractor was an integral part of the work and necessarily involved in it. Like the supplying of coal to operate engines on the dredges, it was indispensable to the prosecution of the work, and it was used exclusively in the performance of the work. Groceries furnished to a contractor under such circumstances and consumed by the laborers, are materials supplied and used in the prosecution of the public work. The judgment of the Circuit Court of Appeals is therefore reversed and that of the District Court affirmed."

In Title Guaranty & Trust Co. v. Puget Sound Engine Works, 163 F. 168, 179, the Circuit Court of Appeals for the Ninth Circuit held claims for "wharfage" and patterns used for making castings which went into the vessel there under construction within the reasonable purview of the statute last cited. In that case Mr. Justice Hunt, speaking for the court, said: "The claims of the Allmond Company and the Puget Sound Pattern Works were for patterns furnished to the molding department of the Puget Sound Engine Works. The patterns were used for the castings which went into the vessel. Why should not those who furnished the patterns be protected as are those who erect the scaffolding upon which carpenters stand, in doing their work upon the actual construction of the ship? We believe they should be."

In United States to Use of J. E. Sadler & Co. v. W. H. French Dredging & Wrecking Co. et al., D.C.Del., 52 F.2d 235, 238, the court held: that coal, water and cement furnished a dredging contractor for use in operating dredges in performing work contracted for were "labor and materials * * * in the prosecution of the work provided for in the contract" within the meaning of the contractor's bond. In that connection Nields, District Judge, said: "Looking to the terms of the statute, it is evident that the purpose of Congress was to require payment for material and labor furnished for the construction of public works. The requirement is simply that the labor and materials be supplied to the contractor in the prosecution of the work provided for in the contract. Decisions of the Supreme Court have made it clear that the statutes and bond given under it must be construed liberally in order to effectuate the purpose of Congress as declared in the act. Technical rules otherwise protecting sureties

from liability have never been applied in proceedings under this statute. Illinois Surety Co. v. John Davis Co., 244 U.S. 376, 380, 37 S.Ct. 614, 61 L.Ed. 1206. The coal and water was supplied to operate the engines on the dredges. It was indispensable to the prosecution of the work. 'If the contractor, whether for purposes of economy or of expedition, elects to do this work by the power of steam, instead of the power of human muscles, it is difficult to understand how it can be logically contended that such power is not supplied in the prosecution of the work, or that the cost of the coal which produces it should not be equally within the protection of the same statute.' City Trust, Safe Deposit & Surety Co. v. United States, 147 F. 155, 156 (C.C.A. 2)."

In Holloway & DuPont Dredging Co. v. DesRocher & Watkins Towing Co. et al., 5 Cir., 57 F.2d 864, in affirming the judgment of the trial court holding that rental of lighter, dredge, boathouse, launch and other equipment leased for the specific purpose of performing dredging work under a contract awarded by the United States for the dredging in the Oklawaka River Canal above Moss Bluff, Fla., was within the protection of the contractor's bond guaranteeing payment of persons supplying "labor and materials", within the meaning of Section 270 of Title 40, U.S. C., 40 U.S.C.A. § 270, the Circuit Court of Appeals for the 5th Circuit used this language: "Of course, recovery in each case depends upon the particular facts shown. It is certain that the work could not have been successfully prosecuted without the use of the equipment. It was rented for that specific purpose and not for use generally or on other work as well. The ruling of the District Court was right."

In United States for the Use of United States Rubber Co. et al. v. Ambursen Dam Co. et al., D.C., N.D.Cal., N.D., 3 F.Supp. 548, it was held that claims for tires and tubes used and worn out in operation of trucks on government dam project; for gas, oil, coal, etc., for generating power used in the prosecution of that project and for explosives so used; for incidental repairs representing ordinary wear and tear of machinery used in prosecution of government project as well as claims for freight, under certain conditions, for small parts and accessories to trucks used in the work, for necessary labor performed at a distance from actual work as well as for rent of machinery used in the construction of public work, are within the contractor's bond as "materials used in construction of public work" within the meaning of the Heard Act, Sec. 270, Title 40, U.S. C., 40 U.S.C.A. § 270. Many interesting cases, illustrating the principle controlling the decision in that and similar cases are cited in the opinion in that case (3 F.Supp. pages 552, 554).

In United States to Use and Benefit of Taylor v. Fidelity & Deposit Co., D. C. D. of Idaho, E.D., 4 F.Supp. 211, it was held that where the work was located at some distance from any settlement where supplies could be secured claims for horse feed and freight thereon, for horseshoes, horseshoe nails, calks and clevises, for camp house equipment necessary to lodging laborers employed on the work, for kitchen and mess hall equipment necessary to provide them with board, for blacksmith coal, axle grease, welding compound, freight on gas and oil, and freight on merchandise used in the prosecution of the work, and groceries furnished for use and actually consumed in the camp of the subcontractor by laborers employed by him were covered by the contractor's bond given as required by the provisions of the Heard Act, Sec. 270, Title 40, U.S.C., 40 U.S.C.A. § 270.

In Standard Accident Insurance Company, Petitioner, v. United States of America for the Use and Benefit of L. R. Powell, Jr., and Henry W. Anderson, as Receivers, etc., 302 U.S. 442, 58 S.Ct. 314, 82 L.Ed. 350, decided by the Supreme Court of the United States on January 3, 1938, the petitioner was surety on a Post Office construction bond given pursuant to the Act of Congress approved August 13, 1894 (c. 280, 28 Stat. 278), as amended, Title 40, U.S.C. Sec. 270, 40 U.S.C.A. § 270.

The respondent, a common carrier by railroad, having transported material for the structure, sued on the bond to recover freight charges and prevailed in the District and Circuit Court of Appeals, 5 Cir., 89 F.2d 658. They held it was "a corporation who had furnished labor or materials used in the construction" of a public building. The correctness of that conclusion was the only question presented to the Supreme Court. The petitioner maintained that freight cannot be considered as "labor or material" without doing violence to the words of the statute; also that Congress did not intend to extend further protection

to carriers who could enforce their lien for charges by retaining and selling the materials."

In overruling these contentions the court, speaking through Mr. Justice McReynolds, said [page 315]:

"And we are committed to the doctrine that it [the Heard Act] should be liberally construed in aid of the evident public object—security to those who contribute labor or material for public works.

"Certainly labor is required for loading freight on railroad cars, moving these over the road, and unloading at destination. A carrier who has procured the doing of all this in respect of material has 'furnished labor.' If a contractor has employed men to move the same kind of material in wheelbarrows, there could be no doubt that he furnished labor. In principle the mere use of cars and track and a longer haul creates no materially different situation.

"Nor do we find reason for excluding the carrier from the benefit of the bond because it might have enforced payment by withholding delivery. The words of the enactment are broad enough to include a carrier with a lien. Nothing in its purpose requires exclusion of a railroad. Refusal by the carrier to deliver material until all charges were paid might seriously impede the progress of public works, possibly frustrate an important undertaking."

Cases might be multiplied indefinitely, but it would serve no useful purpose.

The thought underlying each of the decisions in which it is held that the thing for which claim was made falls within the meaning of the words "labor and materials" as used in the Act involved in this case is that the thing supplied was essential to carrying on and completing the work provided for in the contract and was wholly consumed in that work.

It appears to be agreed between Watsabaugh & Company and the defendant Seaboard Surety Company that at all of the times involved in the instant case a statute requiring that all persons who employed labor in the prosecution of the work provided for in the contracts between A. M. Lundberg and the United States of America; A. M. Lundberg and Watsabaugh & Company; and, A. M. Lundberg and Interstate Heating and Plumbing Company must provide Workmen's Compensation Insurance for the protection of the laborers employed on the job before entering upon the performance of the work.

It follows that it was indispensable to the prosecution of the work provided for in such contracts that such insurance should be provided; it cannot be doubted that the insurance was wholly consumed in that work; and in my opinion a charge for the premium promised to be paid for such insurance but which was not paid falls within the limits of the Heard Act, Sec. 270, Title 40, U.S.C., 40 U.S.C.A. § 270, and the obligation assumed by the defendant Seaboard Surety Company.

The result is that the necessary cost of providing Workmen's Compensation Insurance for the protection of laborers employed by them to do the work that they were required to do under the terms and provisions of the agreement between A. M. Lundberg and Watsabaugh & Company should be charged against the latter;

It follows that the account between Watsabaugh & Company and the defendant Seaboard Surety Company should be and the same is hereby stated as follows:

*Credits*

Watsabaugh & Company should be and are credited with the agreed price for the work to be done under the contract between A. M. Lundberg and Watsabaugh & Company,—that is to say with the sum of....... $11,100.00

*Debits*

Against this amount should be charged the following sums:

First. Payment by A. M. Lundberg to Watsabaugh & Company on account January 19, 1933................... $ 1,000.00

Second. Claims for materials supplied for and actually entering into the prosecution of the work provided for in the subcontract between A. M. Lundberg and Watsabaugh & Company bought by Watsabaugh & Company but not paid for by them and settled and finally disposed of by the defendant Seaboard Surety Company with its own funds after the petition at law was filed herein by Watsabaugh & Company in the name of the United States of America on November 14, 1934, as follows:

| | |
|---|---:|
| 1. Interstate Lumber Co. (2 claims).. $ | 474.00 |
| | 79.70 |
| 2. C. & F. Teaming and Trucking Co. | 106.90 |
| 3. Construction Products Co......... | 734.14 |
| 4. Copper City Coal & Wood Co....... | 425.25 |
| 5. Griffith & Doran.................... | 356.29 |
| 6. Missoula Mercantile Co............ | 5.90 |
| 7. Montana Hardware Co............. | 32.70 |
| 8. Pioneer Brick & Fuel............... | 47.04 |
| 9. W. J. Sewell....................... | 58.10 |
| 10. U. S. Gypsum Co.................... | 1,866.53 |
| 11. Westinghouse Electric Supply Co. | 2.53 |
| Total ..................... $ | 4,189.08 |

Third. Moneys paid by the defendant Seaboard Surety Co. to Ohio Casualty Co., Hamilton, Ohio, pursuant to and in settlement of assignment of Watsabaugh & Co. to Ohio Casualty Co. ........................................ $ 2,293.99

Fourth. The actual reasonable and necessary cost to the defendant Seaboard Surety Company of completing the work that Watsabaugh & Co. agreed to do under its said contract with A. M. Lundberg but did not do; and which the defendant Seaboard Surety Company was compelled to do and did at its own expense as established by proof during the trial of this action ........................... 3,486.55

$10,969.62

Fifth. Moneys not yet paid but which the defendant Seaboard Surety Company must pay to Grace-Mayer Company, 1102-1103 City National Bank Building, Omaha, Nebraska, in settlement and satisfaction of the reasonable and necessary cost of and the price which Watsabaugh & Co. agreed to pay to Grace-Mayer Company as premiums for the workingmen's compensation insurance provided by Grace-Mayer Company to Watsabaugh & Company at their special instance and request and for which the latter agreed to pay the former, but did not pay, the sum of .......... 137.50

Grand Total .................... $11,107.12
To Balance .................... $7.12

## Re: Costs and Attorney's Fees

The claim of Interstate Heating and Plumbing Company for attorney's fees and costs is without merit. In McBride v. School District No. 2, 88 Mont. 110, 117, 290 P. 252, 255, the court said:

"In so far as attorney's fees are concerned, counsel suggests that they are recoverable as a part of costs.

"The items which may be recovered as costs in an ordinary action are enumerated in section 9802, Revised Codes 1921. This section is exclusive, except in so far as certain cases are taken out of its operation by special statutes, and, in the absence of statute, stipulation of the parties, or rule of court (assuming that such rule may be promulgated), attorney's fees are not so recoverable."

In Albrecht v. Albrecht, 83 Mont. 37, 48, 269 P. 158, 161, the court stated the rule with reference to costs as follows; "Costs eo nomine were not recoverable by either party at common law. They are the creatures of the statute, and in this state the right to recover costs must be made to depend upon our Code provisions."

It is provided by statute in Montana, that in an action for the recovery of money or damages costs are allowed, of course, to the plaintiff only when he recovers over $50, exclusive of interest. Sec. 9787, subdivision 3, R.C.M.1921 and 1935.

I know of no statute or rule of court authorizing the assessment of an attorney's fee in the case at bar against the defendant Seaboard Surety Company and counsel have cited none. If Interstate Heating and Plumbing Company and the defendant Seaboard Surety Company agreed that an attorney's fee should be allowed to the former, it is not of record; though the record does show that on the last day of the trial of the case it was stipulated by the attorneys for the defendant Seaboard Surety Company and the intervener Interstate Heating and Plumbing Company that the claim of the latter "had been fully paid". It cannot reasonably be held that one whose claim has been paid in full can on any legal theory recover over $50, exclusive of interest. The necessary conclusion is that the claim of the intervener Interstate Heating and Plumbing Company for attorneys' fees and costs must be and it is hereby denied.

## Re: Claims of Fell & Pinkerton and Morley & Thomas Co.

What has been said with reference to the claim of Grace-Mayer Company applies equally to the claims of Fell & Pinkerton and Morley & Thomas Company.

It follows that it should be and it is hereby ordered, and this does order:

1. That the defendant Seaboard Surety Company do have and recover from Clarence M. Stoffel, Joseph F. Cita and Fred E. Watsabaugh, co-partners doing business as Watsabaugh & Company, the sum of $7.12 with interest thereon at the legal rate together with its costs and disbursements herein necessarily expended;

2. That the defendant Interstate Heating and Plumbing Company take nothing by its action;

3. That the intervener Grace-Mayer Company do have and recover of and from the defendant Seaboard Surety Company the sum of $137.50 with interest thereon at the legal rate from this day together with its costs and disbursements herein necessarily expended;

4. That the interveners Fell & Pinkerton Company do have and recover of and from the defendant Seaboard Surety Com-

pany the sum of $33.78 with interest thereon at the legal rate from this day together with its costs and disbursements herein necessarily expended; and,

5. That the interveners Morley & Thomas Company do have and recover of and from the defendant Seaboard Surety Company the sum of $599.17 with interest thereon at the legal rate from this day together with its costs and disbursements herein necessarily expended.

Judgment will be entered accordingly.