656 P.2d 236

**STATE of New Mexico, ex rel. W.M. CARROLL & CO., a New Mexico corporation, Plaintiff-Appellee,**

v.

**K.L. HOUSE CONSTRUCTION CO., INC., and Western Casualty & Surety Company, Defendants-Appellants.**

**No. 14,258.**

Supreme Court of New Mexico.

Dec. 20, 1982.

Barnhart & Associates, Charles Barnhart, Stephen D. Bass, Albuquerque, for defendants-appellants.

Spann, Latimer & Hollowwa, E. Douglas Latimer, J. Kerwin Hollowwa, Albuquerque, for plaintiff-appellee.

OPINION

PAYNE, Chief Justice.

This case requires us to decide whether a third tier supplier is entitled to protection under the New Mexico "Little Miller Act," Sections 13–4–18 to 13–4–20, N.M.S.A.1978. The trial court held that such a supplier is covered. We affirm.

K.L. House Construction Co., Inc., (House) was awarded the general contract on a state construction project. Heights Plumbing Co. (Heights) entered into a subcontract with House. Heights then engaged Carlton Sheet Metal Co. as a subcontractor, and Carlton purchased supplies from W.M. Carroll & Co. (Carroll). Carlton failed to pay for these supplies, and Carroll sued House and House's bonding company under the Little Miller Act. Although House claimed that Carroll had no standing to sue under the Act, the trial court granted summary judgment for Carroll.

The Little Miller Act is modeled after the federal Miller Act, 40 U.S.C. §§ 270a through 270d (1976 and Supp. IV 1980). These statutes are intended to provide a remedy equivalent to that of a materialmen's lien, which ordinarily may not attach to government property. *J.W. Bateson Co. v. United States ex rel. Board of Trustees,* 434 U.S. 586, 98 S.Ct. 873, 55 L.Ed.2d 50 (1978). Section 13–4–19, N.M.S.A.1978, provides in part:

A. Every person, firm or corporation who has furnished labor or material [for use in a state construction contract] and who has not been paid in full * * * shall have the right to sue on [the general contractor's] payment bond * * *;

[p]rovided, however, that any person having direct contractual relationship with a subcontractor, but no contractual relationship, express or implied, with the contractor furnishing such payment bond shall have a right of action upon said payment bond upon giving written notice to said contractor within ninety days from the date on which such person did or performed the last of the labor or furnished or supplied the last of the material for which such claim is made, stating with substantial accuracy the amount claimed, and the name of the party to whom the material was furnished or supplied or for whom the labor was done or performed.

These provisions have not been interpreted in New Mexico. However, the federal courts have interpreted the identical federal provisions as allowing suits only by a party having a direct contractual relationship with a subcontractor who in turn deals directly with the general contractor. *See United States ex rel. Bryant v. Lembke Construction Co.,* 370 F.2d 293 (10th Cir. 1966); *United States ex rel. Jonathan Handy v. Deschenes Const. Co.,* 188 F.Supp. 270 (D.Mass.1960); *Elmer v. United States Fidelity & Guaranty Co.,* 275 F.2d 89 (5th Cir.1960); *United States ex rel. W.J. Halloran Steel Erection Co. v. Frederick Raff Co.,* 271 F.2d 415 (1st Cir.1959); *United States ex rel. Whitmore Oxygen Co. v. Idaho Crane & Rigging Co.,* 193 F.Supp. 802 (E.D.Idaho 1961) Annot., 79 A.L.R.2d 855 (1961); 7 Am.Jur. Trials, *Miller Act Litigation* § 8 (1964 & Supp.1982).

This interpretation excludes third tier suppliers such as Carroll from the protection of the Act. As noted in the cases cited, this interpretation complies with the congressional intent expressed in the legislative history of the federal act. However, this interpretation of congressional intent has been criticized. *See J.W. Bateson Co. v.*

*United States ex rel. Board of Trustees, supra* (Stevens, J., dissenting).

There is no legislative history from which we may ascertain the intent of the New Mexico Legislature in enacting this Act. However, Section 13–4–18 states that the performance bond is intended to satisfy "*all* just claims for * * * materials and supplies furnished * * * whether * * * said materials and supplies be furnished, under the original contract or under *any* subcontract." (Emphasis added).

We have previously stated that

[t]he statute is remedial in nature and that its principal purpose is to protect the supplier of labor and materials, and that it should be liberally construed to effectuate the obvious legislative intent.

*State ex rel. Komac Paint & Wallpaper v. McBride,* 74 N.M. 233, 236, 392 P.2d 577, 579 (1964). We have also held that the obligations of sureties under the bonds are construed strictly in favor of the beneficiaries. *Employment Security Comm'n. v. C.R. Davis Contracting Co.,* 81 N.M. 23, 462 P.2d 608 (1969).

Section 12–2–2(A), N.M.S.A.1978, sets forth the following rule of construction relevant to this case:

A. words and phrases shall be construed according to the context and the approved usage of the language, but technical words and phrases and such others as may have acquired a peculiar and appropriate meaning in law shall be construed according to such meaning * * *.

In light of the statutory language set forth above, and in the absence of any indication of a contrary intent on the part of the state Legislature, we hold that the Little Miller Act shall apply to suppliers of materials under any subcontract involving a state construction project. We recognize that the federal cases are contrary, but those cases rely on legislative history which is inapplicable to the New Mexico statute.

Our conclusion is supported by analogy to the provisions governing mechanic's and materialmen's liens. Under Section 48–2–2, N.M.S.A.1978, a party in Carroll's position would have a lien on the building if the construction project were private. Because

the project involved here is governmental, no lien can attach. Sections 13–4–18 and 13–4–19 were intended to provide a comparable remedy to materialmen who provide supplies for a state government construction project. Adoption of the federal rule here would defeat that clear legislative purpose.

We recognize the concern for unknown contingent liabilities facing a general contractor as a result of liberal interpretation of the statute, and the possible increased costs that would follow. However, we believe such concerns are unfounded. As we held in *State ex rel. Komac Paint & Wallpaper v. McBride, supra,* the requirement that the claimant give written notice within 90 days is a necessary prerequisite to recovery.

This notice requirement acts as a protection against unlimited and unascertainable contingent liabilities. The Legislature has weighed the possibility of increased expense due to more extensive bonding procedures against the need to protect all those who have input into a government construction project, and has determined that the latter is the predominant consideration. We are not inclined to reweigh these factors.

Accordingly, the judgment is affirmed.

IT IS SO ORDERED.

FEDERICI and STOWERS, JJ., concur.