884 P.2d 821

**The CIT GROUP/EQUIPMENT FINANC-ING, INC., a New York corporation, Plaintiff–Appellee,**

**v.**

**HORIZON POTASH CORPORATION, a Delaware corporation; Amax, Inc., a New York corporation; Mountain States Mutual Life Insurance Company; Union Industrial Corporation; Barrie Hood, Inc.; Industrial Electric Service & Supply Co.; Electric Supply Co. of Carlsbad, Inc.; The Mine Supply Co. and IMSCO, a Division of The Mine Supply Co.; Uni-**

versal Bearing & Chain, Inc.; Industrial Bus Lines, Inc.; Mining Service & Supply, Inc.; and Garrett's Supply Corporation, all New Mexico corporations; United States Bureau of Land Management, a subagency of the United States Department of the Interior, an agency of the United States Government; Construction Products Division of W.R. Grace & Co.-Conn., a Connecticut corporation doing business as Composite Technology; Timothy L. McLemore; Suresh K. Desal; ABC Tool & Equipment Rental, Inc., a New Mexico corporation; Emmanuel J. "Dan" Daniel; Sweatt Construction Co., a New Mexico partnership, and Keers Environmental, Inc., a New Mexico corporation, Defendants.

MOUNTAIN STATES MUTUAL LIFE INSURANCE COMPANY, a New Mexico corporation, Plaintiff-in-Intervention–Appellant,

Union Industrial Corporation, Barrie Hood, Inc.; Industrial Electric Supply Inc.; Electric Supply Co.; Mine Supply Co.; Universal Bearing & Chain; Industrial Bus Lines, Inc.; Mining Service & Supply, and Garrett's Supply Corporation, all New Mexico corporations, Plaintiffs-in-Intervention,

v.

THE CIT GROUP/EQUIPMENT FINANCING, INC., a New York corporation, Defendant-in-Intervention–Appellee,

Horizon Potash Corporation, a Delaware corporation; Horizon Gold Corporation, a/k/a Horizon Resources Corporation; Amax, Inc., a New York corporation; United States Bureau of Land Management, a subagency of the United States Department of the Interior, an agency of the United States Government, Defendants-in-Intervention.

No. 15646.

Court of Appeals of New Mexico.

Aug. 24, 1994.

Gail Gottlieb, Sutin, Thayer & Brown, P.C., Albuquerque, for plaintiff, defendant-in-intervention-appellee.

W.T. Martin, Jr., Law Offices of W.T. Martin, Jr., P.A., Carlsbad, for defendants, plaintiff-in-intervention-appellant.

*OPINION*

PICKARD, Judge.

The mechanics' and materialmen's lien statute for labor, equipment, and materials furnished in certain projects provides that:

> Every person performing labor upon, providing ... equipment ... for, or furnishing materials to be used in the construction, alteration or repair of any mining claim ..., [or] who performs labor in any mining claim ... has a lien upon the same for the work or labor done, [and] for the ... agreed upon charge for the ... equipment ... provided ... or materials furnished....

NMSA 1978, § 48–2–2 (Cum.Supp.1992). The question we address today is whether unpaid workers' compensation insurance premiums are labor, equipment, or materials as those words are used in this statute. We hold that they are not.

Defendant Horizon Potash Corporation operates a potash mine on mining claims in Eddy County, New Mexico. Plaintiff, CIT Group/Equipment Financing, Inc., loaned Horizon money. When the loan was in default, CIT filed suit to enforce or foreclose its security interest in collateral at Horizon's mine. Before CIT filed suit, Plaintiff–in–Intervention Mountain States Mutual Life Insurance Company had filed a claim of lien for unpaid workers' compensation premiums for insurance Mountain States provided on behalf of the workers at the potash mine.

Based on these facts, CIT filed a motion for summary judgment claiming that the workers' compensation premiums were not lienable under Section 48–2–2. Mountain States did not disagree with the facts but claimed that the premiums were lienable under Section 48–2–2. The district court granted CIT's motion for summary judgment, and Mountain States appeals. We affirm.

■ We hold that workers' compensation premiums are not lienable under Section 48–2–2 because they are neither labor, equipment, nor materials as contemplated by that section. Mountain States does not contend that they are equipment or materials under Section 48–2–2. Rather, Mountain States limits its contention to an argument that the premiums are a component of labor because they are indispensable to the lawful performance of labor at the mine. *See* NMSA 1978, § 52–1–6(C) (Repl.Pamp.1991) (requiring employers to carry workers' compensation insurance).

■ Although the mechanics' and materialmen's lien statute, being remedial in nature, is to be liberally construed, *Lyons v. Howard,* 16 N.M. 327, 331, 117 P. 842, 843 (1911), no New Mexico cases have construed the "labor" portion of the statute to apply to anything other than labor. In *Mitchell v. McCutcheon,* 33 N.M. 78, 84, 260 P. 1086, 1088–89 (1927), our Supreme Court relied on the earlier case of *Gray v. Pumice Stone Co.,* 15 N.M. 478, 110 P. 603 (1910). In *Gray* our Supreme Court read the statute expansively and said that "labor of any class bearing a direct relation to the mining operations" would be a sufficient basis for a claim of lien. *Id.* at 487, 110 P. at 606. However, in both of those cases, the lien was claimed for the cost of the actual labor—work performed in and around the mines or work performed off the mine premises but that was essential to the mining operations.

■ When New Mexico cases do not directly answer the question presented, we look for guidance in analogous law in other states or the federal system. *See Lowery v. Atterbury,* 113 N.M. 71, 74 n. 2, 823 P.2d 313, 316 n. 2 (1992); *Yount v. Millington,* 117 N.M. 95, 103, 869 P.2d 283, 291 (Ct.App. 1993), *cert. denied,* 117 N.M. 121, 869 P.2d 820 (1994). In *State ex rel. W.M. Carroll & Co. v. K.L. House Construction Co.,* 99 N.M. 186, 656 P.2d 236 (1982), our Supreme Court noted that New Mexico's "Little Miller Act" was modelled after the federal Miller Act, both of which are "intended to provide a remedy equivalent to that of a materialmen's lien, which ordinarily may not attach to government property." *Id.* at 186, 656 P.2d at

236. Both the state and federal Miller Acts apply to people who have "furnished labor or material" in the construction of projects pursuant to government contracts. *See id.* at 187, 656 P.2d at 237. Thus, federal decisions considering whether required workers' compensation insurance premiums are lienable under the federal Miller Act may be persuasive for our purposes.

■ With the exception of one heavily criticized federal district court case that was affirmed by the circuit court of appeals on procedural grounds, *United States ex rel. Watsabaugh & Co. v. Seaboard Surety Co.,* 26 F.Supp. 681 (D.Mont.1938), *aff'd on different grounds,* 106 F.2d 355 (9th Cir.1939), the overwhelming weight of authority in the federal courts is to the effect that it would be an unwarranted and overexpansive reading of the Miller Act to allow the words "labor and materials" to encompass workers' compensation insurance premiums. *See United States ex rel. Cobb–Strecker–Dunphy & Zimmerman, Inc. v. M.A. Mortenson Co.,* 894 F.2d 311, 313–14 (8th Cir.1990), and cases cited therein. We find ourselves in agreement with the following reasoning of the lower court in the *Mortenson* case:

> If the Court were to adopt the rule established in *Seaboard Surety* and advocated by plaintiff here, no functional limitations would exist on Miller Act claims. Almost any cost of doing business could be considered "indispensable to the prosecution of the work provided for in [federal] contracts." ... Such a result would clearly expand the coverage of the Miller Act far beyond the plain meaning of its terms.

*United States ex rel. Cobb–Strecker–Dunphy & Zimmerman, Inc. v. M.A. Mortenson Co.,* 706 F.Supp. 685, 691 (D.Minn.1989) (citation omitted; bracket in original), *aff'd,* 894 F.2d 311 (8th Cir.1990). Thus, we follow the weight of both authority and common sense in holding that the plain meaning of the words "performing labor" in Section 48–2–2 is limited to doing work.

■ As noted by CIT, Mountain States' claim is not measured by any calculation of wages or other measure of labor, but instead is a contract for an obligation of indemnification based on risk and other complex factors having little to do with any benefit conferred on the mine. Thus, applying the plain meaning of the word in the statute, mine workers may have liens for the value of their labor; insurance companies providing insurance to the mines may not. *See Huntington Nat'l Bank v. Sproul,* 116 N.M. 254, 261, 861 P.2d 935, 942 (1993) (courts ordinarily give statutes their plain meaning.)

Our holding regarding the proper interpretation of Section 48–2–2 makes it unnecessary to discuss NMSA 1978, Section 48–2–17 (Repl.Pamp.1987), which CIT contends prohibits a lien in this situation. Section 48–2–17 provides that unpaid workers' compensation insurance premiums furnished to certain contractors are "material" to those contractors so that they may be recovered from the contractors' performance bonds, "as though a lien had been filed against the improved premises, but [the entity furnishing same] shall have no lien against the improved premises." This case deals exclusively with owners, not contractors; therefore, Section 48–2–17 does not apply.

The summary judgment in favor of CIT is affirmed.

IT IS SO ORDERED.

BLACK and FLORES, JJ., concur.