**UNITED STATES ex rel. SOUTHERN G-F CO. v. LANDIS & YOUNG et al.**

No. 2574.

District Court, W. D. Louisiana, Monroe Division.

Aug. 29, 1935.

Albert E. Mayer, of Atlanta, Ga., and Hudson, Potts & Bernstein, of Monroe, La., for plaintiffs.

Madison, Madison & Fuller, of Monroe, La., and Wilkinson, Lewis & Wilkinson, of Shreveport, La., for defendants.

Hudson, Potts & Bernstein, Theus, Grisham, Davis & Leigh, and McHenry, Montgomery, Lamkin & Lamkin, all of Monroe, La., Lewright & Lewright and J. Arthur Sandlin, all of San Antonio, Tex., and Foster, Hall, Barret & Smith and M. C. Trichel, Jr., all of Shreveport, La., for interveners.

DAWKINS, District Judge.

This cause involves two claims of alleged furnishers of labor and material to Landis & Young, general contractors with the government for the construction of a new post office building in Monroe, La. Proceedings were instituted upon the bond, under the Heard Act (40 U.S.C.A. § 270). The first claim is that of L. D. Robbins, for labor as electrician, installing the electrical work, the facts with respect to which are not in serious dispute, and are as follows:

Robbins was the subcontractor of the electrical work, which he agreed to do at a fixed price of $1,860. He did most of the work himself and, although paid by the contractor $1,875.15, has sued for a balance of $1,055.62, on the theory that, having done the work himself, he was entitled to recover the prevailing wage of an expert electrician required under the terms of the contract by Landis & Young with the government, notwithstanding his relationship of subcontractor. If allowed to recover, the result will be to increase the cost of the electrical work by approximately the amount demanded. There appears to be no dispute as to the amount of work done, but the controversy is as to the basis of payment.

In the original contract with the government, it was provided that the "rate of wage for all laborers and mechanics employed by the contractor, or any sub-contractor * * * shall be not less than the prevailing rate of wages for work of a similar nature in the State * * * in which the public building is located." Paragraph 10 B of the specifications provides as follows: "It is expressly understood and agreed that for the purpose of said act every person while performing work of a laborer or mechanic on the public work covered by this contract, is to be regarded as employed as a laborer or mechanic by the contractor or subcontractor, regardless of any contractual relationship alleged to exist between the contractor or subcontractor and such laborer or mechanic."

The engineer representing the government called to the attention of the contractor this provision in the specifications early in the beginning of the work, but, notwithstanding, the latter permitted Robbins to continue to do the work himself

Conclusions of Law.

The legal question involved is as to whether Robbins is entitled to recover the prevailing wage for the work which he performed himself, in view of his agreement to do it for a fixed price. Of course if Robbins, instead of doing the work himself, had employed others for that purpose, I think they, undoubtedly, could have recovered on the defendant's bond at the prevailing wage, had the subcontractor failed or been unable to pay them. Defendants would have been relegated to their action against Robbins for the difference between the cost of the work at the prevailing wage and the figure provided in the subcontract. To protect themselves, the contractors could have exacted bond, as was done by the government. No case in point has been cited, nor has any been found, and the matter will have to be decided on familiar principles.

The object of this provision in the contract with the government was to require, as a matter of policy, the payment of wages according to the scale named, and Landis & Young agreed that this should be done, "regardless of any contractual relationship * * * between the contractor and such laborer." If the electrical work could be contracted in this

manner so as to avoid liability by the principal contractor and its bondsmen, there would be no reason why that of carpenters, paper-hangers, plumbers, etc., could not have been done in the same way, on such terms that the scales of wages for those crafts could not possibly have been paid, resulting in a defeat of the purposes of the agreement and the law under which that provision was incorporated in the contract. It would seem that the remedy of the defendant was to see that Robbins did not do the work himself, and, if he insisted on doing it, then his subcontract be abrogated.

■ My conclusion is that, under the very letter of the contract, in so far as the claim for wages of Robbins is concerned, this subcontract will have to be ignored, leaving the parties, defendant and intervener, to whatever remedies they may have in some other proceeding. Intervener should recover.

### Claim of American Employers' Insurance Company.

This claim is for premiums upon a policy of employers' liability insurance. Intervener issued its policy to protect the defendant contractors against injuries to the latter's employees, and seeks to have the premium allowed as labor or material, or both, furnished "in the prosecution of the work." Investigations were made by the agents of the insurer as to conditions of safety, with appropriate suggestions for improvement; also of injuries to workmen, and claims therefor were settled and adjusted, including medical and hospital bills.

### Conclusions of Law.

It is contended by the intervener that the law of Louisiana, where the contract was made (Act No. 20 of 1914, as amended), makes contractors liable for injuries received by their employees, and necessarily the cost of furnishing insurance for their protection is taken into consideration in determining the price for which the work is done; that labor upon the job was actually done through investigations, suggestions for safer working conditions, and in settlement and adjustment of claims of employees against the contractor; and in furnishing medical attention, medicines, and hospital services. Hence the provision of the Heard Act, giving to the furnishers of labor and material on a job of this kind an action upon the bond, reasonably includes the services performed by interveners.

If this position be correct, then it would seem that premiums on policies covering losses by fire of materials assembled on the ground for constructing the building could, with equal logic, be said to fall within the claimed category, where that protection is carried by the contractor, since he would necessarily take it into consideration in determining the price for which he could do the work. In the latter case there would be no occasion for inspection or suggestions to the insured other than to minimize the risk, which, of course, is one of the principal objects of activities by the agents of an employers' liability insurer. Whether the amount paid out under the policy issued in this case were large or small, if the risk were fully covered, would not vary the cost of the work of the contractor, once the amount of the premium were fixed and the policy issued. Money paid on claims for injuries does not go into or become a part of the value incorporated in the building, like labor and materials furnished in actual prosecution of the work. The price of the permit to do the work from the local authorities, under their police power, would, of course, be an item of cost which the contractor would incur in performing the work, as much as a thousand brick or days' labor, but I doubt if it could be seriously contended that the fee for such a permit could be collected from the bond company in a proceeding such as this.

■ It is true that the act has been somewhat liberally construed to include many classes of material and labor, although performed at points remote from the actual site of the work itself, but it was found that the same was done either upon or in connection with materials which went into the structure, or that the materials were furnished to the laborers during the time they were actually performing the work. It is not contended that any materials, other than medicines and hospital treatment, were actually furnished by this intervener, and, if it is to recover, the same must be upon the theory that the amount claimed was for labor furnished in the prosecution of the work. Payment of hospital and doctor's bills could only indirectly affect the progress of the work by restoring the laborer to a condition which would enable him to subsequently return to the job. The matter is more closely assimilated to the cost of repairing machinery used in the work and I scarcely think such a claim could be allowed as

labor furnished "in the prosecution of the work."

The demand will be rejected.

Proper decree should be presented.