**UNITED STATES of America for the Use and Benefit of COBB–STRECKER–DUNPHY & ZIMMERMAN, INC., Plaintiff,**

v.

**M.A. MORTENSON COMPANY, Federal Insurance Company, and Employers Insurance of Wausau, a mutual company, Defendants.**

No. Civ. 4–88–752.

United States District Court,
D. Minnesota,
Fourth Division.

Feb. 14, 1989.

Eric W. Forsberg, Greene & Forsberg, Minneapolis, Minn., for plaintiff.

Gregory M. Bistram, Ronald E. Martell, Gerald E. Gosch, Moore, Costello & Hart, St. Paul, Minn., for defendants.

## MEMORANDUM AND ORDER

MacLAUGHLIN, District Judge.

This matter is before the Court on defendants' motion to dismiss and plaintiff's motion for summary judgment. Defendants' motion will be granted and plaintiff's motion will be denied.

FACTS

Plaintiff Cobb–Strecker–Dunphy & Zimmerman, Inc. (Cobb) is a Minnesota corporation with its principal place of business in Minneapolis, Minnesota. Cobb's principal business is the obtaining and placing of insurance coverage for its customers. Defendant M.A. Mortenson Company (Mortenson) is a Minnesota corporation with its principal place of business in Golden Valley, Minnesota. Mortenson's principal business is construction. Defendant Federal

Insurance Company (Federal) is a New Jersey corporation with its principal place of business in Darren, New Jersey. Federal's principal business is insuring and underwriting various types of risks through the issuance of insurance policies and bonds. Defendant Employers Insurance of Wausau (Wausau) is a Wisconsin corporation with its principal place of business in Wausau, Wisconsin. Like Federal, Wausau's principal business is insuring and underwriting various types of risks through the issuance of insurance policies and bonds. Hayes Contractors, Inc. (Hayes) is a Minnesota corporation with its principal place of business in Minneapolis, Minnesota. Hayes' principal business was construction. However, on February 18, 1988, Hayes filed for protection under the federal bankruptcy laws and is no longer operating as a viable business concern. Although Hayes is not a party to this case, its bankruptcy precipitated this lawsuit.

On or about September 28, 1984 Mortenson, as general contractor, entered into a contract with the United States of America and the Department of Veterans Administration for construction of a Veterans Administration Medical Center (hereinafter referred to as the Project). Mortenson (as principal) and Federal (as surety) executed a payment bond in the amount of $2.5 million for the protection of all persons supplying labor and materials in the prosecution of the work on the Project pursuant to the provisions of the Miller Act, 40 U.S. C. §§ 270a–270d.[1] Complaint Exh. A. On or about November 26, 1984 Mortenson entered into a written subcontract with Hayes whereby Hayes as subcontractor agreed to complete the mechanical, water, storm and sanitary sewerage systems for the Project. Pursuant to the written subcontract, Hayes was required to furnish Mortenson with a payment bond acceptable to Mortenson. Affidavit of Jonathan H. Morgan Exh. B at par. 18. On or about February 6, 1985 Hayes (as principal) and Wausau (as surety) executed and delivered to Mortenson as obligee a subcontract payment bond in the amount of $25 million for the benefit of all persons performing labor or furnishing materials, supplies and equipment in the prosecution of the work provided for in the subcontract agreement. Complaint Exh. B.

The subcontract between Mortenson and Hayes required Hayes to maintain necessary insurance coverage including workers' compensation and comprehensive general liability policies. Morgan Aff. Exh. B at par. 16.1. Plaintiff Cobb alleges that over an extended period of time it obtained various forms of insurance coverage for Hayes, including workers' compensation coverage and comprehensive general liability coverage relating to the Project. Plaintiff alleges that the premiums incurred by Hayes and owed to Cobb for workers' compensation and comprehensive general liability coverage relating to the Project have not been paid. Plaintiff initiated this lawsuit to recover these unpaid premiums.

In Count I of its complaint, plaintiff seeks to recover the unpaid premiums from Mortenson and Federal pursuant to the payment bond executed by Mortenson and Federal under the Miller Act. Plaintiff claims that the premiums incurred by Hayes and owed to Cobb are compensable items pursuant to the terms and conditions of the bond and federal law. Count II of plaintiff's complaint states a claim against Mortenson under a quasi contract theory. Plaintiff alleges in Count II that Mortenson will be unjustly enriched if it is allowed to retain the benefit of the insurance provided by Cobb to Hayes without having to pay for the coverage. In Count III of its com-

---

**1.** Title 40 U.S.C. § 270a(a) provides in part:

Before any contract, exceeding $25,000 in amount, for the construction, alteration, or repair of any public building or public work of the United States is awarded to any person, such person shall furnish to the United States

 ...

  ....

(2) A payment bond with a surety or sureties satisfactory to such officer for the protection of all persons supplying labor and material in the prosecution of the work provided for in said contract for the use of each such person.... Whenever the total amount payable by the terms of the contract shall be more than $5,000,000 the said payment bond shall be in the sum of $2,500,000.

plaint, plaintiff seeks recovery against Wausau under the payment bond given by Hayes and Wausau to Mortenson for the Project. Plaintiff claims the unpaid premiums are compensable items pursuant to the terms and conditions of the subcontract payment bond. In Count IV of its complaint, plaintiff asks the Court to impose a constructive trust on Wausau. Plaintiff alleges that sometime in late 1987 or early 1988 Wausau assumed control for performance and completion of the subcontract agreement between Hayes and Mortenson and required that all or a portion of the contract receipts due to Hayes from Mortenson be paid to Wausau to be used in paying the claims of suppliers, employees and others in connection with the Project. In Count IV of its complaint plaintiff seeks to impose on Wausau a constructive trust for all funds received from Mortenson pursuant to the subcontract agreement between Mortenson and Hayes. Plaintiff claims Wausau is obligated by law and equity to pay plaintiff's claims for unpaid premiums from the contract receipts. Jurisdiction over Count I of plaintiff's complaint is premised on the Miller Act, 40 U.S.C. § 270b, and 28 U.S.C. § 1331. Jurisdiction over the remaining counts is based on the doctrine of pendent jurisdiction.

Defendants now move the Court to dismiss plaintiff's complaint. Defendants contend that Count I of plaintiff's complaint fails to state a claim upon which relief can be granted under the Miller Act. Because Count I represents the sole basis for federal subject matter jurisdiction, defendants correspondingly seek dismissal of plaintiff's pendent claims set forth in Counts II–IV for lack of subject matter jurisdiction. In the alternative, defendants argue that Counts II–IV fail to state a claim upon which relief can be granted and should be dismissed on that ground.

Plaintiff opposes defendants' motion and itself moves for summary judgment on Counts I and III of its complaint. Plaintiff contends that under the terms of the two payment bonds at issue it is entitled to judgment as a matter of law awarding plaintiff unpaid premiums relating to the Project. Defendants contend that plaintiff is not entitled to recover on the payment bonds and further state that more discovery is needed in order for defendants to adequately respond to plaintiff's summary judgment motion.

## DISCUSSION

### I. *Miller Act Claim*

In Count I of its complaint, plaintiff seeks to recover the workers' compensation and general liability insurance premiums incurred by Hayes in relation to the Project from Mortenson and Federal pursuant to the provisions of the Miller Act, 40 U.S.C. § 270a *et seq.* The Miller Act establishes a bonding requirement for persons entering contracts with the United States for construction of a public building. Title 40 U.S.C. § 270a provides in relevant part:

Before any contract, exceeding $25,000 in amount, for the construction, alteration, or repair of any public building or public work of the United States is awarded to any person, such person shall furnish to the United States the following bonds ...

. . . .

(2) *A payment bond* with a surety or sureties satisfactory to such officer *for the protection of all persons supplying labor and material* in the prosecution of the work provided for in said contract for the use of each such person.

(Emphasis added.) Pursuant to 40 U.S.C. § 270b(a):

*Every person who has furnished labor or material* in the prosecution of the work provided for in such contract, in respect of which a payment bond is furnished under sections 270a to 270d of this title ... *shall have the right to sue on such payment bond* for the amount, or the balance thereof, unpaid at the time of institution of such suit and to prosecute said action to final execution and judgment for the sum or sums justly due him.

(Emphasis added.)

Relying on the language of the Miller Act emphasized above, defendants argue in their motion to dismiss and in opposition to plaintiff's motion for summary judgment

that only persons supplying labor or material for a federal construction project are entitled to prosecute a claim under a payment bond furnished pursuant to the Miller Act. Defendants contend that workers' compensation and comprehensive general liability insurance are not labor or material as contemplated by the Miller Act. Accordingly, defendants contend plaintiff may not recover unpaid premiums for such insurance under a Miller Act payment bond. In its motion for summary judgment and in opposition to defendants' motion to dismiss, plaintiff argues that workers' compensation and general liability insurance fall within the purview of the Miller Act. Plaintiff thus contends that it may recover from Mortenson and Federal pursuant to the terms of their Miller Act payment bond.

■ Although defendants' motion to dismiss Count I of plaintiff's complaint is styled as a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), because matters outside the pleadings have been presented to the Court, defendants' motion is more appropriately analyzed as one for summary judgment brought pursuant to Fed.R.Civ.P. 56. The Court thus faces in essence cross motions for summary judgment on Count I of plaintiff's complaint on the issue of whether workers' compensation and general liability insurance are "labor and material" for purposes of the Miller Act. A movant is not entitled to summary judgment unless the movant can show that no genuine issue exists as to any material fact. Fed.R.Civ.P. 56(c). In considering a summary judgment motion, a court must determine whether there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The role of a court is not to weigh the evidence but instead to determine whether, as a matter of law, a genuine factual conflict exists. *AgriStor Leasing v. Farrow*, 826 F.2d 732, 734 (8th Cir. 1987). In making this determination, the Court is required to view the evidence in the light most favorable to the nonmoving party and to give that party the benefit of all reasonable inferences that can be drawn from the facts. *Agristor Leasing*, 826 F.2d at 734. When a motion for summary judgment is properly made and supported with affidavits or other evidence as provided in Fed.R.Civ.P. 56(c), then the nonmoving party may not merely rest upon the allegations or denials of the party's pleading, but must set forth specific facts, by affidavits or otherwise, showing that there is a genuine issue for trial. *Lomar Wholesale Grocery, Inc. v. Dieter's Gourmet Foods, Inc.*, 824 F.2d 582, 585 (8th Cir. 1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 707, 98 L.Ed.2d 658 (1988). Moreover, summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

■ The bond executed by Mortenson and Federal on the Project was furnished to the United States pursuant to 40 U.S.C. § 270a(a)(2). The purpose of this statute has been explained by the United States Supreme Court:

> Section 270a(a)(2) of the Miller Act establishes the general requirement of a payment bond to protect those who supply labor or materials to a contractor on a federal project. Ordinarily, a supplier of labor or materials on a private construction project can secure a mechanic's lien against the improved property under state law. But a lien cannot attach to Government property …, so suppliers on Government projects are deprived of their usual security interest. The Miller Act was intended to provide an alternative remedy to protect the rights of these suppliers.

*F.D. Rich Co. v. United States for the Use of Industrial Lumber Co.*, 417 U.S. 116, 121–22, 94 S.Ct. 2157, 2161, 40 L.Ed.2d 703 (1974) (citations omitted). Although enacted as a replacement for state lien law, the Miller Act provides a federal cause of action, and the scope and substance of recov-

ery are governed by federal rather than state law. *F.D. Rich,* 417 U.S. at 127, 94 S.Ct. at 2164; *United States for the use and benefit of Leonardo Mariana v. Piracci Construction Co.,* 405 F.Supp. 904, 906 (D.D.C.1975). "The Miller Act is 'highly remedial [and] entitled to a liberal construction and application in order properly to effectuate the Congressional intent to protect those whose labor and materials go into public projects.' " *F.D. Rich,* 417 U.S. at 124, 94 S.Ct. at 2162, *quoting Clifford F. MacEvoy Co. v. United States for the use and benefit of Calvin Tomkins Co.,* 322 U.S. 102, 107, 64 S.Ct. 890, 893, 88 L.Ed. 1163 (1944). Notwithstanding a liberal construction, however, the Miller Act does not establish an unlimited basis for relief. *See, e.g., F.D. Rich,* 417 U.S. at 126–31, 94 S.Ct. at 2163–66 (plaintiff not entitled to attorneys' fees, even though in absence of such an award the claimant is not fully recompensed). By its terms, the Miller Act is limited to claims for "labor or material [furnished] in the prosecution of the work provided for in [the] contract." 40 U.S.C. § 270b(a); *Mariana,* 405 F.Supp. at 906.

In support of its claim that the unpaid premiums are recoverable under the Miller Act, plaintiff cites the early case of *United States to use of Watsabaugh & Co. v. Seaboard Surety Co.,* 26 F.Supp. 681 (D.Mont.1938), *aff'd,* 106 F.2d 355 (9th Cir. 1939). In *Seaboard Surety,* the court permitted recovery of workers' compensation insurance premiums under the Heard Act, the predecessor statute to the Miller Act. Noting decisions of the Supreme Court requiring liberal construction of the Heard Act and bonds given under it, the court stated that as a general rule "anything that is indispensable to the work contracted for falls within the meaning of the words 'labor and materials' as used in the Heard Act." *Seaboard Surety,* 26 F.Supp. at 689. The court went on to hold that because workers' compensation insurance providing protection to laborers employed on the job was required by statute, such insurance was indispensable to the work contracted for, and premiums for such insurance were

properly recoverable under the Heard Act. *Seaboard Surety,* 26 F.Supp. at 692.

The interpretation of "labor and materials" set forth in *Seaboard Surety* is plausible. Starting from the proposition that the Miller Act should be liberally construed, it seems reasonable to find that recovery should be allowed for all expenses related to a federal construction project. A majority of courts, however, have found that such a liberal construction of "labor and materials" is not consonant with the Congressional purpose in enacting the Miller Act. These courts have interpreted the phrase "labor and materials" more restrictively, and have refused to allow recovery for workers' compensation insurance premiums.

Illustrative of this majority view is *United States for the use of David West v. Peter Kiewit & Sons' Co.,* 235 F.Supp. 500 (D.Alaska 1964). In that case, plaintiff sought recovery of premiums due for workers' compensation insurance provided to a subcontractor on a federal project. Plaintiff brought a claim under the Miller Act, 40 U.S.C. §§ 270a–270d, against the prime contractor and its surety in an attempt to recover on the bond furnished by those parties in regard to the project. The court rejected plaintiff's claim, holding that workers' compensation insurance premiums are not recoverable as "labor and material" under a Miller Act payment bond. *Peter Kiewit & Sons',* 235 F.Supp. at 502.

In *Peter Kiewit & Sons',* the court recognized that the Miller Act should be liberally construed. The court found, however, that a liberal construction does not justify ignoring plain words of limitation. The court noted that "[t]he Miller Act represents a Congressional effort to protect persons supplying labor and material for the construction of public buildings," and the Act "is designed to give such persons the same protection that state lien laws give ordinarily to persons furnishing labor and material for use in private construction." *Peter Kiewit & Sons',* 235 F.Supp. at 501. The court found nothing to suggest that Congress intended the Miller Act to provide greater protection than that afforded by

the state lien laws. The court then determined that because state lien laws typically do not cover workers' compensation insurance premiums, such premiums should not be considered "labor and material" for purposes of the Miller Act. *Peter Kiewit & Sons'*, 235 F.Supp. at 502. In so holding, the court specifically considered and rejected the reasoning of the court in *Seaboard Surety*. *Id.*

Other courts considering the issue of whether workers' compensation insurance premiums are "labor and material" for purposes of the Miller Act have reached a similar conclusion. *See United States for the use of Gibson v. Harman*, 192 F.2d 999 (4th Cir.1951); *United States for the use of Bordallo Consolidated, Inc. v. Markowitz Bros., Inc.*, 249 F.Supp. 610 (D.Guam 1966); *United States for the use of General Accident Fire and Life Assurance Corp. v. Maguire Homes, Inc.*, 186 F.Supp. 659 (D.Mass.1959); *United States for the use and benefit of New York Casualty Co. v. Standard Surety & Casualty Co. of New York*, 32 F.Supp. 836 (S.D.N.Y.1940). Likewise, courts have held that liability insurance premiums are not "labor and material" as contemplated by the Miller Act. *See, e.g., United States ex rel. Southern G–F Co. v. Landis & Young*, 16 F.Supp. 832 (W.D.La.1935).

The Court finds that the majority view outlined above represents a sound interpretation of the Miller Act. If the Court were to adopt the rule established in *Seaboard Surety* and advocated by plaintiff here, no functional limitation would exist on Miller Act claims. Almost any cost of doing business could be considered "indispensable to the prosecution of the work provided for in [federal] contracts." *Seaboard Surety*, 26 F.Supp. at 692. Such a result would clearly expand the coverage of the Miller Act far beyond the plain meaning of its terms. Plaintiff has shown no justification for such an expansion. Accordingly, the Court finds that workers' compensation and general liability insurance premiums are not recoverable under the Miller Act.

The decision of the United States Supreme Court in *United States for the benefit of Sherman v. Carter*, 353 U.S. 210, 77 S.Ct. 793, 1 L.Ed.2d 776 (1957) does not require a contrary result. In *Sherman*, a contractor who had a contract with the United States for the construction of federal buildings furnished a bond pursuant to the Miller Act. The collective bargaining agreement under which the employees of the contractor were hired obligated the contractor to pay the employees wages at specified rates and, in addition, to pay 7½ cents per hour of their labor to the trustees of a health and welfare fund established for their benefit and that of other workers. When the contractor failed to pay the required contributions to the fund, the trustees of the fund sued the surety to recover unpaid contributions. The Supreme Court held that the unpaid contributions were recoverable under the Miller Act. 353 U.S. at 220–21, 77 S.Ct. at 798–99.

In holding that unpaid benefit fund contributions are "labor and material" recoverable under the Miller Act, the Court in *Sherman* stated that:

> contributions to the fund were part of the consideration [the contractor] agreed to pay for the services of laborers on his construction jobs. The unpaid contributions were a part of the compensation for the work to be done by [the contractor's] employees.

*Id.* at 217–18, 77 S.Ct. at 797. The same cannot be said of the unpaid workers' compensation and general liability insurance premiums for which plaintiff seeks recovery here. Such unpaid insurance premiums are not part of the compensation owing workers who supply labor on the Project but rather are general business expenses. Accordingly, unpaid workers' compensation and general liability insurance premiums are not recoverable as labor and materials under the Miller Act.

Based on the foregoing, the Court will dismiss Count I of plaintiff's complaint.

## II. *Pendent Claims*

Under the doctrine of pendent jurisdiction, state law claims not otherwise supported by federal jurisdiction may be heard in federal court if sufficiently related to a

federal claim for which an adequate jurisdictional basis exists. The seminal case recognizing and defining the scope of pendent jurisdiction is *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). In *Gibbs*, the United States Supreme Court held that a determination of pendent jurisdiction is a two-part inquiry. First, a court must determine if it has the power to entertain a pendent claim.

> Pendent jurisdiction, in the sense of judicial *power*, exists whenever there is a claim "arising under [the] Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority ...," U.S. Const., Art. III, § 2, and the relationship between that claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional "case."

*Gibbs*, 383 U.S. at 725, 86 S.Ct. at 1138. The Court in *Gibbs* formulated a test for determining judicial power to exercise pendent jurisdiction, stating that so long as the federal claim has substance sufficient to confer subject matter jurisdiction on the Court, pendent jurisdiction is proper if the state and federal claims "derive from a common nucleus of operative fact." *Gibbs*, 383 U.S. at 725, 86 S.Ct. at 1138.

■ The Court in *Gibbs* emphasized that "pendent jurisdiction is a doctrine of discretion, not of plaintiff's right." *Gibbs*, 383 U.S. at 726, 86 S.Ct. at 1139. Therefore, if a court determines it has power to exercise jurisdiction over a pendent claim, the court must take the next step and decide whether the case presents an appropriate situation for the court's exercise of discretion in favor of pendent jurisdiction. The Court in *Gibbs* stated that courts should look to "considerations of judicial economy, convenience and fairness to litigants" in exercising their discretion and should avoid "[n]eedless decisions of state law." *Gibbs*, 383 U.S. at 726, 86 S.Ct. at 1139.

■ The discretionary character of pendent jurisdiction takes an added importance in this case. As discussed above, the Court will dismiss plaintiff's federal claim brought pursuant to the Miller Act. As noted by the Supreme Court in *Gibbs*, "if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *Gibbs*, 383 U.S. at 726, 86 S.Ct. at 1139. While the foregoing rule is not absolute, courts commonly exercise their discretion to dismiss state claims when federal claims are dismissed at an early stage of the litigation. *See Stokes v. Lokken*, 644 F.2d 779, 785 (8th Cir.1981).

In this case, the Court will decline to exercise jurisdiction over the remaining state claims. This lawsuit was only recently filed, and apparently little discovery has taken place to date. Accordingly, neither concerns of judicial economy nor fairness to litigants mandates that the Court retain jurisdiction. *See Ingram Corp. v. J. Ray McDermott & Co.*, 698 F.2d 1295 (5th Cir. 1983). Based on the foregoing, the Court will dismiss plaintiff's state law claims (Counts II–IV).

Based on the foregoing, and upon all the files, records, proceedings and arguments of counsel,

IT IS ORDERED that:

1. defendants' motion to dismiss is granted; and

2. plaintiff's motion for summary judgment is denied.

LET JUDGMENT BE ENTERED ACCORDINGLY.